**PORTER v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 414.**

Circuit Court of Appeals, Second Circuit.

July 18, 1932.

Milbank, Tweed, Hope & Webb, of New York City (Walter E. Hope, Richard L. Davisson, and Edward N. Perkins, all of New York City, of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Erwin N. Griswold, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lewis S. Pendleton, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Porter, the petitioners' testator, in 1918 and 1919, conveyed personal property to a trust company, under two deeds of trust, by which he created interests in specified beneficiaries, not necessary to set forth. Each deed reserved to him a sole power to revoke the appointments and substitute other beneficiaries, expressly excepting himself and his estate. He died in November, 1926, just before his death revoking the earlier deed and substituting another of the same kind. The

chief question is whether the funds so conveyed are to be included as a part of his taxable estate under section 302 (d) of the Revenue Act of 1926, 26 USCA § 1094 (d). The pertinent language is as follows: "The value of the gross estate * * * shall be determined by including the value * * * of all property * * · * to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * to alter, amend, or revoke." The executors' argument is that as their testator had irrevocably parted with any interest in the property, the fact that he might change the beneficiaries at his pleasure is irrelevant; he had finally put it beyond his control; his reserved power to determine the eventual donees did not affect the definitiveness of his abandonment. There was therefore nothing on which to levy an excise; nothing certainly which could be treated as still a part of his estate.

The Commissioner answers that the power was in effect beneficial, despite its limitation. The donee might revoke the original limitation and select a facile beneficiary; might even make an agreement beforehand that the substitute should unite with him to terminate the trust, as is possible in New York, when all the beneficiaries are in being. Personal Property Law (Consol Laws N. Y. c. 41) § 23. In Meyer v. Bank of Manhattan Trust Co., 232 App. Div. 228, 249 N. Y. S. 640, the deed provided that it should not be revoked, but the settlor had a power to change the beneficiaries. He made his wife sole cestui que trust and with her consent successfully revoked the deed. In Faulkner v. Irving Trust Co., 231 App. Div. 87, 246 N. Y. S. 313, the settlor could not revoke until he was thirty-five years old, but by changing the beneficiary and getting the consent of the substitute, he avoided the limitation. The Court of Appeals of that state has not, however, passed upon the point, and we are not entirely satisfied that the rights of existing beneficiaries can be circumvented by such a device. It may eventually be held that while the donee of the power is at liberty to revoke and reappoint at his pleasure, his choice must not violate the condition upon its exercise, either directly or indirectly. If so, the original interests are defeasible only when the settlor does not profit by the change, and equity will inquire whether this limitation has been observed, or whether the whole contrivance is in violation of the trust. As we think that this part of the order should be affirmed anyway, we pass the point.

The language of section 302 (d) is broad enough to cover the case at bar. United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461, arose under the Act of 1916 (39 Stat. 756 as amended 39 Stat. 1000), which did not comprise general powers, and was decided for that reason. Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, 66 A. L. R. 397, involved the Act of 1921, where the relevant section (section 402 (c), 42 Stat. 278) read: "To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust * * * intended to take effect in possession or enjoyment at or after his death." The settlor had reserved a general beneficial power to revoke, whose termination by his death was treated as a taxable transfer. The theory was that, although the mere falling in of the remainders would not serve as such (a ruling repeated in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244), the settlor had in substance imposed a condition upon the interests originally limited, which his death removed. His reservation of control left them contingent; only when that ended were they finally confirmed. The settlor's death was therefore an event upon which an excise might be levied; and, since the settlor might at any time resume the property as his own, the funds could be included in his estate. Part of this applies with equal force to subject the funds at bar to an excise, since for that result it is immaterial that the settlor cannot reappropriate the property. Though he has finally denuded himself, he controls the disposition while he lives; the existing limitations are conditional upon his pleasure. A gift is a bilateral transaction and demands a donee as well as a donor; it is incomplete though the donor has parted with his interest, if the donee remains indeterminate, and the beneficiaries are determined only when the power to change them ends. Thus the subject matter of the tax was within the reach of Congress as much as any other transfer by death; the only question is whether the statute has exceeded any constitutional limitations.

However, while there was a proper subject of taxation, it does not follow that the tax actually imposed was valid. It was computed upon an amount that included the trust funds as part of the testator's estate,

which by hypothesis they were not; he had parted with them. If the deeds had been made after February 26, 1926, when the act was passed, we can see no difficulty; Congress may measure an excise as it will, certainly so long as it does not upset arrangements made in reliance upon an existing immunity. Any one setting up such trusts with the law before him would be charged with notice that they would subject his estate to taxes calculated as prescribed. None of the reasons on which Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, depended, exist in such a case; nor does the law attempt to tax one person for the property of another, as in Hoeper v. Tax Commission, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248. But the deed in fact antedated the law, and if it had been impossible for the testator to escape, possibly difficulties would have arisen. It might perhaps be held that the excise must be computed with some relation to the property disposed of; that it could not be reckoned by a graduated scale upon an amount which included the settlor's estate as well. That question has never, so far as we can find, been bruited; we raise it now merely by way of narrowing the issue, without suggesting an answer. We should have had to answer it, if there had been a complementary gift tax in the Act of 1926, —appropriately worded (Guggenheim v. Commissioner, 58 F.(2d) 188 (C. C. A. 2) —making the revocation of such a power a transfer. In that event the donee could not escape, either by revoking the power, or leaving it unexercised till his death. But there was no gift tax, and the testator by relinquishing the power could have freed his estate altogether; he had ample season for this, for he did not die until some eight months after the statute was passed. This seems to us to avoid any possible constitutional difficulties. If the power be regarded as the testator's property in a beneficial sense —a hypothesis we reject—Reinecke v. Northern Trust Co. rules; if it be regarded as limited to a change of beneficiaries from which he could not indirectly profit, he might abandon it and avoid the tax. Surely there is no such hardship in the alternative as would justify holding that the inclusion of the estate in the base for computation denied him "due process of law." Especially as to taxes, courts are unwilling, except in the plainest cases, to declare statutes invalid for that reason. Treat v. White, 181 U. S. 265, 21 S. Ct. 611, 45 L. Ed. 853; McCray v. U. S., 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; U. S. v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493; Billings v. U. S., 232 U. S. 261, 282, 34 S. Ct. 421, 58 L. Ed. 596. The tax was therefore valid and the Board was right.

The other question raised is of deductions claimed by the executors for payments made to fulfill the testator's benefactions. He had promised to Princeton University to pay the cost of a memorial window to be built for his son, killed in the war. To a hospital in Glen Cove, Long Island, he promised to pay for the building of an X-ray room, as another memorial. Each institution in reliance upon the promise performed the condition, and the executors paid. The record contains no evidence as to the character of either, but we take judicial notice that Princeton University is "organized and operated exclusively for * * * educational purposes," within section 303 (a) (3) of the Act of 1926, 26 USCA § 1095 (a) (3). We can know nothing about the hospital. There are private hospitals, "part of the net earnings of which inures to the benefit of any private stockholder or individual." This may not be one, but upon the bare record we cannot assume so, and the taxpayer has the burden of proof.

Against this result the executors invoke section 303 (a) (1), 26 USCA § 1095 (a) (1), which allows a deduction of "claims against the estate * * * to the extent that such claims * * * were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth." That the testator's promise created a valid contract nobody denies; "promissory estoppel" is now a recognized species of consideration (Restatement of Contracts, § 90); indeed, the doctrine first gained currency in cases like those before us. But the section was certainly not intended to include all contracts supported by a consideration; so much is clear. We need not limit it to cases where the consideration passes to the testator; for example, a promise to pay for goods delivered to another might fall within it, if the testator has recourse over. But if he has not, the transaction is in substance a gift and must stand or fall with section 303 (a) (3). So here, though the testator was bound by his promise, what in fact he did was to give to the hospital a memorial to his son: it was not a financial bargain at all, and subdivision 1 is concerned with such. Had he delivered to it a bond under seal in a state where the common law still persists, the claim would hardly have been incurred for "full consideration in money or money's worth"; though the purpose were to use the proceeds

676

to add to its equipment. The statute cannot have meant to make critical the accident that the hospital, by acting upon the promise, fastened a debt upon the estate. So to construe the language is to confuse the purposes of the two subdivisions.

Order affirmed, except as to the contribution to Princeton University.