## GLASER et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9776.

Circuit Court of Appeals, Eighth Circuit.
Feb. 19, 1934.

Rehearing Denied March 16, 1934.

Abraham B. Frey and Abraham Lowenhaupt, both of St. Louis, Mo. (Karol A. Korngold, of St. Louis, Mo., on the brief), for petitioners.

John MacC. Hudson, Sp. Asst. Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is brought by the executors of the estate of David Sommers, deceased, from a decision of the Board of Tax Appeals refusing to allow a deduction from the gross estate for inheritance tax (27 B. T. A. 313). The facts found by the Board of Tax Appeals material to the issue on appeal are as follows: David Sommers in his lifetime was an annual contributor to the Jewish Federation, which numbered among its charities the Dorothy Drey Sommers Shelter Home, a corporation organized solely for charitable purposes. In 1916 Mr. Sommers made his will wherein he bequeathed $35,000 to the Shelter Home. In 1923, at a mass meeting of the Jewish Federation, Mr. Sommers promised that he would assume all of the expenses of the Home in lieu of his usual subscription to the Federation of $5,000 per annum. His proposal was accepted, the subscription to the Federation canceled, and the Shelter Home was "thereafter omitted from the Federation's budget." Afterwards Mr. Sommers, in statements to his friends and relatives and to directors of the Federation, promised that he would support the Shelter Home and would provide for its support after his death. In 1923 he was president of the Shelter Home and secured a new matron for it, a Mrs. Waldman. To induce her to give up the position she then held and become matron of the Shelter Home, Mr. Sommers promised her that he would take care of the Home financially while he lived and after his death as well. In 1925 Mr. Sommers told his attorney that he wished to change his will and to leave $250,000 or more to the Shelter Home. That was never done, however, and Mr. Sommers died suddenly in December of 1925. After his death there was found in an envelope containing his will a memorandum in his handwriting, but not dated or signed, which contained the following: "Article 2. Change to $250,000—$50,000 for a building balance. The income on this 50 m to be reinvested and not spent. $200,000 a trust fund to furnish

permanent income." The probate court acting upon a petition filed by the executors of Mr. Sommers' will and upon written request of the "sisters and brothers of the deceased who are the only ones interested in the estate," found that it was the intention of the deceased to leave $250,000 to the Dorothy Drey Sommers Shelter Home, and authorized the executors to pay that amount to the proper officers of the Home, which was done. The Commissioner allowed a deduction from the amount of the gross estate for purposes of the estate tax in the amount of the $35,000 bequest but refused to allow as a deduction the balance of the $250,000 which had been paid over to the Home. Notice of deficiency having been given an appeal was taken to the Board of Tax Appeals, and it affirmed the finding of the Commissioner.

The contention for the executors is that the Shelter Home had a claim against the estate of the decedent "incurred or contracted bona fide and for a fair consideration in money or money's worth," within the meaning of section 303 (a) (1) of the Revenue Act of 1924, 26 USCA § 1095 note, which provides:

"For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property, * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth ? * *."

It is argued that on the facts found, Mr. Sommers made a binding contract for fair consideration in money or money's worth with the Federation of Jewish Charities to take care of the Shelter Home by his will and that the promise made by Mr. Sommers to Mrs. Ida Waldman that he would take care of said Home financially during his life and after his death by his will, upon which promise said Ida Waldman relied, was a contract for the benefit of the Home, enforceable by it.

There is no disputing the strength of the moral appeal in the claim for deduction. The executors of the estate have turned over the whole sum of $250,000 to the charity, the heirs consenting, and the burden of the tax in addition seems onerous; but the production of governmental revenue by the force of law-

ful taxation is not controlled by such considerations. The amount paid out of the estate of the deceased to the Shelter Home is taxable under the statute as a part of the gross estate and cannot be deducted unless it comes within the provision of the statute prescribing the deductions which can be made.

The Board of Tax Appeals decided that neither the promise which was given by Mr. Sommers to the Federation of Jewish Charities nor the promise made to Mrs. Ida Waldman on which she relied when she became matron of the Home, nor any other statement or declaration of Mr. Sommers, was sufficient in law to create a cause of action in favor of the Shelter Home against the estate of Mr. Sommers, and that the Shelter Home did not have any valid claim against the estate for the amount. In view of the conclusion we have reached upon the proper construction of the sections of the statute in question, we do not deem it necessary to decide that point.

In our opinion whether there was an enforceable claim in favor of the Home and against the estate resulting from the promise of Mr. Sommers or not, there was not, in any event, such a claim "contracted bona fide for fair consideration in money or money's worth" within the meaning of the quoted deduction clause of the statute. The interpretation of the statute made by the court of appeals of the Sixth Circuit in the case of Latty v. Commissioner, 62 F.(2d) 952, 954, appears to us to be sound and controlling against the appellant. The court said: "We think that ordinarily these words (contracted bona fide and for fair consideration in money or money's worth) must be construed to evidence an intent upon the part of Congress to permit the deduction of claims only to the extent that such claims were contracted for a consideration which at the time either augmented the estate of the decedent, granted to him some right or privilege he did not possess before, or operated to discharge a then existing claim, as for breach of contract or personal injury." The interpretation was arrived at upon full consideration of the previous decisions in the Sixth Circuit, Briscoe v. Craig, 32 F.(2d) 40, the Second Circuit, Schuette v. Bowers, 40 F.(2d) 208, and this circuit, Jacobs v. Commissioner, 34 F.(2d) 233, and applied to the facts in this case, precludes allowance of deduction on account of the $250,000 bounty which, doubtless, Mr. Sommers had an intention to bestow upon the Home but neither transferred nor bequeathed to it.

It is argued for the executors that in the case of Latty, supra, the court did not have before it exactly the same state of facts upon which to make application of the statute as is here presented in that no charitable institution was there concerned. In that case the bounty of the decedent was directed towards his daughter and not to a charity. But the claim for deduction was there made upon the same subdivision of the same statute as is relied on by the executors in this case, and the court was required, in order to decide the dispute, to declare the true meaning of the statute. There are no words in the subdivision to justify contention that the meaning of a claim "contracted bona fide for fair consideration in money or money's worth" is any different when the claim accrues to a charitable institution from what it is when the same kind of a claim accrues to a daughter. The words of the statute have the same meaning in either case.

It is argued that the decision of the court in the Second Circuit in Porter v. Commissioner, 60 F.(2d) 673, 675, would justify a different interpretation of the statute. In that case the executors of a decedent's estate paid to Princeton University the sum of $5,000 as a balance due upon a subscription of $25,000 made by the decedent during his lifetime for the purpose of erecting a memorial window in memory of decedent's son who lost his life in the World War. The University, in reliance upon the subscription, performed the condition. It appears from the court's opinion that the decision of the Board of Tax Appeals disallowing the deduction claimed by the executors for the $5,000 was not sustained by the Court of Appeals. The court seems to have been of the opinion that the deduction was allowable under section 303 (a) (3) of the Revenue Act of 1926, 26 USCA § 1095 (a) (3). That section provides that there shall be deducted from the gross estate of a decedent in determining the net estate subject to the estate tax, the following: "The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual." The court took judicial notice of the fact that Princeton University was "organized and operated exclusively for educational purposes." There was apparently no consideration given to the question whether the subscription made by the decedent to the University amounted to a "transfer"

within the meaning of the statute. The promises made by Mr. Sommers in this case cannot by any reasonable persuasion be brought within the meaning of "bequests, legacies, devises or transfers" covered by this section of the statute, and this part of the decision of the Court of Appeals of the Second Circuit does not aid the petitioners herein.

Another payment made by executors was also considered by the court in the same case of Porter v. Commissioner. The decedent in that case had subscribed the sum of $12,000 to a hopsital in Glen Cove, Long Island, for the building of an X-ray room as a memorial for his son, and the hospital had incurred obligations on the faith of the subscription. The executors paid a balance of six thousand on that item and relied on section 303 (a) (1) to justify deduction, being the same section now before us for interpretation. The court said: "The executors invoke section 303 (a) (1), 26 USCA § 1095 (a) (1), which allows a deduction of 'claims against the estate * * * to the extent that such claims * * * were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth.' That the testator's promise created a valid contract nobody denies; 'promissory estoppel' is now a recognized species of consideration (Restatement of Contracts, § 90); indeed, the doctrine first gained currency in cases like those before us. But the section was certainly not intended to include all contracts supported by a consideration; so much is clear. We need not limit it to cases where the consideration passes to the testator; for example, a promise to pay for goods delivered to another might fall within it, if the testator has recourse over. But if he has not, the transaction is in substance a gift and must stand or fall within section 303 (a) (3). So here,

though the testator was bound by his promise, what in fact he did was to give to the hospital a memorial to his son; it was not a financial bargain at all, and subdivision 1 is concerned with such. Had he delivered to it a bond under seal in a state where the common law still persists, the claim would hardly have been incurred for 'full consideration in money or money's worth'; though the purpose were to use the proceeds to add to its equipment. The statute cannot have meant to make critical the accident that the hospital, by acting upon the promise, fastened a debt upon the estate. So to construe the language is to confuse the purposes of the two subdivisions." The action of the Board of Tax Appeals denying the claim for deduction as to this item was sustained.

We think this language of the Court of Appeals in the Second Circuit, written apparently without attention being called to the opinion in Latty v. Commissioner, is of substantially the same intendment as that used by the Court of Appeals in the Sixth Circuit. It is the clear understanding in both circuits that section 303 (a) (1) does not justify making deduction from the gross estate in a case like the one presented here, where there was not a business transaction on the part of the decedent or a contract intended to augment his estate or to grant him some right or privilege he did not possess before or to discharge him from any existing obligation, but only a contemplated bounty was involved.

It is argued that the case for deduction is strengthened by the fact that Mr. Sommers was president of the Shelter Home Corporation at the time he made the promises above recited, but we do not find merit in the contention.

The decision of the Board of Tax Appeals is affirmed.