## BENZ et al. v. CARNEY.

### No. 6608.

District Court, D. Massachusetts.

May 28, 1936.

Hale & Dorr and Laurence E. Green, all of Boston, Mass., for plaintiff.

---

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Asst. U. S. Atty., both of Boston, Mass., and Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and M. C. Ferguson, Sp. Assts. to Atty. Gen., for defendant.

BREWSTER, District Judge.

This is an action to recover $7,152.27 with interest, paid as an estate tax upon the estate of Jacob C. Benz, deceased, which the plaintiffs allege was illegally exacted.

The decedent died November 12, 1932, leaving a substantial estate upon which was returned, and paid a tax of $94,847.23. Thereafter the Commissioner of Internal Revenue assessed an additional estate tax, in the amount of $6,750.61 with interest amounting to $401.66, and the total of $7,-152.27 was paid by the plaintiffs on November 10, 1934.

Claim for refund was duly filed and was rejected by the Commissioner.

The controversy arises over the refusal of the Commissioner to take from the gross estate the amount of $52,811.08, representing a sum paid on May 25, 1933, by the plaintiffs, as executrices, to Paine Webber & Co. of Boston, a brokerage partnership.

According to the stipulated facts, Edith L. Benz and Doris L. Benz were the wife and daughter, respectively, of the decedent. In 1926 they caused to be organized a Massachusetts corporation known as the "Doris Realty & Investment Company." In 1929 the corporation wished to open a margin account with Paine Webber & Co. of Boston for the purpose of buying and selling securities on the margin, with credit to be extended to the corporation from time to time by Paine Webber & Co. Paine Webber & Co. were unwilling to open and carry such an account with the corporation and to extend credit to it unless the corporation would furnish some satisfactory guaranty against loss.

At the request of the corporation, the decedent entered into a written agreement with Paine Webber & Co. on December 23, 1929, a copy of which agreement is as follows:

"Messrs Paine, Webber & Company

"In consideration of your carrying the account of Doris Realty & Investment Company or of your opening any new account or accounts for the said * * * under such terms and conditions as you may deem best, I hereby agree to guarantee and hold you harmless from and to promptly pay you on demand any debit balance now or hereafter due thereon and any and all losses now existing on said account or accounts or hereafter arising thereon or therefrom.

"I hereby expressly waive demand and notice of default, as well as of all notices concerning said account or accounts and changes therein from time to time, or of the manner of conducting or closing the same, or of notice of the acceptance of this guaranty. I also waive any requirement of legal proceedings on your part against said * * *

"I agree that you shall have a lien on and may hold as collateral security for said account or accounts any and all securities and equities you may hold or have in any account for me at any time, and I agree, that the assertion or enforcement by you of said lien shall not release me as guarantor or otherwise affect this guaranty or my liability for any debit balance or losses on said account or accounts. I further agree that any demand that I perform this guaranty or any action or proceeding brought to enforce the same or my liability hereunder shall not release me or otherwise affect said lien, and that you shall at all times have both of said remedies to protect and compensate you against any loss or debit balance due on said account or accounts.

"I also agree that this guaranty is a continuing one and shall cover the period of existence of said account or accounts, and I expressly consent that said account or accounts may be changed by * * * from time to time by the purchase and sale of securities or other property and/or by payments and/or deliveries of securities or other property to * * * without notice to me.

"[Signed] Jacob C. Benz
"Dated December 23, 1929
"Witness R. George Restall (signed)"

Thereupon the corporation opened an account by the purchase of certain shares of stock requiring no margin and extending credit to the amount of purchases and carried the securities for the account of the corporation.

From time to time thereafter Paine Webber & Co. extended further credit to the corporation. The account of the corporation was carried until May 25, 1933, at which time, after disposing of all securities held as collateral in said account, the corporation owed Paine Webber & Co. a debit of

$52,811.08. Upon demand this sum was paid by plaintiffs out of the estate. No recovery of any part of this sum was ever had from the Realty & Investment Company, which was dissolved by the Massachusetts Legislature in March, 1934, having no assets after the payment of liabilities to the federal government and the commonwealth of Massachusetts, for taxes and expenses of liquidation.

The executrices claim to be entitled to deduct the payment to Paine Webber & Co. from the gross estate as an amount paid in satisfaction of a claim against the estate, allowable as a deduction under the provisions of the applicable Revenue Act.

These provisions of statute are found in the Revenue Act of 1926, § 303, and the Revenue Act of 1932, § 805, which, so far as material, are as follows:

Revenue Act of 1926, c. 27, 44 Stat. 9, 72 (26 U.S.C.A. § 412 note):

"Title III.—Estate Tax   *   *   *

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for   *   *   *   claims against the estate,   *   *   *   to the extent that such claims   *   *   *   were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth." U.S.C., title 26, § 412.

Revenue Act of 1932, c. 209, 47 Stat. 169, 280 (26 U.S.C.A. § 412 (b) and note):

"Title VI—Estate Tax Amendments   *   *   *

"Sec. 805. Deductions.

"Section 303 (a) (1) of the Revenue Act of 1926, as amended, is amended to read as follows:

" '(1) Such amounts—   *   *   *

" '(C) for claims against the estate,   *   *   *

as are allowed by the laws of the jurisdiction,   *   *   *   under which the estate is being administered.   *   *   *   The deduction herein allowed in the case of claims against the estate,   *   *   *   when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." U.S.C. title 26, § 412.

It is the contention of the defendant that the claim involved in this controversy did not come within the scope of the amended act inasmuch as it was not "for an adequate and full consideration in money or money's worth." In support of this contention defendant relies upon Latty v. Commissioner of Internal Revenue (C.C.A.) 62 F.(2d) 952, 954; Porter v. Commissioner of Internal Revenue (C.C.A.) 60 F.(2d) 673, 675; and Glaser v. Commissioner of Internal Revenue (C.C.A.) 69 F.(2d) 254.

An examination of these cases leads to the conclusion that they do not control the case at bar. In Latty v. Commissioner, supra, the court obviously was dealing with a testamentary disposition of property. I can readily subscribe to the statement in that case that "if the purpose of the parties was that the subject of the contract might pass as a part of the estate and be made a matter of testamentary disposition, and it did so pass or was so treated, the claim is not to be regarded as founded upon a consideration 'in money or money's worth.' "

The instant case presents no suggestion of an attempted testamentary disposition of property. The executrices paid upon a contract entered into by the decedent in his lifetime for a valuable consideration. The contract was one imposing a direct liability upon the estate.

The cases of Porter v. Commissioner, supra, and Glaser v. Commissioner, supra, were cases involving a promise by the decedent to make gifts for certain charitable purposes upon which the donees had acted relying upon the promise. These cases are easily distinguishable. It is to be noted, however, that in the Porter Case the court said, referring to section 303 of the Revenue Act of 1926, that, "We need not limit it to cases where the consideration passes to the testator; for example, a promise to pay for goods delivered to another might fall within it, if the testator has recourse over."

The court found the claim not deductible because the transaction, in substance, was a gift and "though the testator was bound by his promise, what in fact he did was to give to the hospital a memorial to his son; it was not a financial bargain at all, and subdivision 1 is concerned with such."

More in point is the case of United States v. Mitchell (C.C.A.) 74 F.(2d) 571, 576. In

that case the decedent guaranteed loans made by a bank to a corporation in which members of his family were interested. A claim, based upon the decedent's agreement, was held to be a proper deduction from the gross estate of the decedent. The court repudiated the doctrine that the consideration for the promise must pass to the decedent. The court, in a carefully considered opinion, reached the conclusion that the promise made by the debtor to the bank was a direct promise, creating a direct obligation of the promisor. Two facts induced this conclusion: "(a) The indebtedness concerning which the decedent was making a promise had not been created. Its possible creation was the subject matter of the decedent's promise. (b) The bank had previously refused to loan the money to the applicants. It acted only on decedent's promise to repay the loss, if any."

It appears in that case that the court had to determine whether the promise fell within the statute of frauds. While that statute is not involved in the instant case, nevertheless the facts above noted are like those in the case at bar, and the observation of the court with respect to them would seem to be pertinent.

The Mitchell Case was later followed in the same circuit in Commissioner of Internal Revenue v. Strauss (C.C.A.) 77 F.(2d) 401.

It is my conclusion that a claim, based upon an agreement such as was entered into by the decedent Benz, came within the reach of section 303 of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932. This conclusion, in my opinion, is in harmony with the cases considered above. It is fundamental that the tax must be measured by the value at death of the interest which is transferred. Reinecke, Coll., v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397.

The parties have stipulated that if the plaintiffs are entitled to deduct the said sum of $52,811.08 from the gross estate of the decedent Jacob C. Benz, in computing the net estate upon which the federal estate tax was assessed, the plaintiffs are entitled to recover judgment in the sum of $7,152.27 with interest from November 10, 1934, as provided by law. I rule that plaintiffs are entitled to this deduction, and in accordance with this stipulation judgment may be entered for the plaintiffs for the stipulated amount.