## TAFT, EXECUTOR, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 746. Argued April 25, 1938.—Decided May 16, 1933.

*Mr. Robert A. Taft* for petitioner.

*Mr. Warner W. Gardner,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *L. W. Post* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The question presented is whether the petitioner, as executor, may deduct from the gross estate amounts payable pursuant to the decedent's binding promises as claims against the estate incurred bona fide and for an adequate and full consideration in money or money's worth within the meaning of § 303 (a) (1), or as transfers to charitable or educational institutions under § 303 (a) (3), of the

Revenue Act of 1926.[1]  The deductions were of amounts owing at the decedent's death upon the following contractual obligations.

By letter the decedent agreed with the University of Cincinnati to establish a fund as a memorial to her husband, stating that she would make available to the trustees of the fund, whom she named, during the ensuing year, $50,000, during the following year $75,000, and, in each succeeding year, $100,000 or such other income as might be derived from a fund of $2,000,000 which she would ultimately transfer to the trustees.  The letter outlined the terms of the trust to which the income was to be devoted.  The offer was formally accepted by the Board of Directors of the University and, pursuant to the agreement, the decedent made payments to the trustees and her executor continued to pay sums on account of interest and principal.  The University is an educational institution and no profit enures to anyone from its operation.

---

[1] "Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property . . . to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth, . . .

"(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, . . ."

Being deeply interested in the Cincinnati Institute of Fine Arts and its work, and having jointly with her husband and as an individual contributed large sums to this work, the decedent, to obviate the necessity of reducing the personnel of the orchestra the Institute conducts, agreed with the Institute that if it would retain two musicians she would pay their salaries under contracts covering two years. In reliance upon her promise the Institute re-engaged the two men. The decedent paid the amount of their salaries prior to her death and petitioner, as executor, paid them to the end of the contract term. The Institute would not have re-employed these men except for the agreement. It is a charitable corporation organized for the maintenance of a symphony orchestra and other activities, and no profit enures to anyone from its operations.

The decedent agreed by letter addressed to the Cincinnati Institute of Fine Arts that if it would employ a director of art she would contribute $10,000 towards his salary. In reliance upon this undertaking the institution engaged such a director at a salary of $10,000 per annum. She paid the stipulated amount for one and one-half years prior to her death and the petitioner, as executor, paid for one year subsequent to her death. There were no available funds for the employment of a director except those received from the decedent and the Institute would not have employed one except for her agreement. It is an educational institution and does not operate for profit.

In 1930 the decedent agreed with the University of Cincinnati that if it would engage a named person as professor to give a specified course of instruction she would pay the University the amount of his salary. She had made similar arrangements for prior years. The University employed the professor and would not have done so except for her agreement. At the time of her death a

sum remained due according to her promise which the petitioner paid.

The total claimed as deductible on account of these obligations was $2,015,420. Under the law of Ohio, the decedent's promises were and are legally binding and enforceable against her estate. The Commissioner ruled, and the Board[2] and the court below[3] have held, that the estate's obligations in question, though contracted bona fide, were not incurred for an adequate and full consideration in money or money's worth as required by clause (1), and payments of the sums promised are not transfers to or for the use of any corporation organized and operating exclusively for charitable or educational purposes within the meaning of clause (3), of § 303 (a) of the Act. We granted certiorari because of an alleged conflict of decision.[4]

1. The claims against the estate were not incurred or contracted for an adequate and full consideration in money or money's worth within the meaning of the statute. The terms used, the legislative history of the section, and the regulations interpreting it, require this conclusion. The conditions imposed by the decedent as to the expenditure of the money promised and the stipulation on the part of the payee to expend it in that fashion, or its compliance with the conditions, do not constitute an adequate or a full consideration in money or money's worth within the meaning of the Act. If there were doubt about the matter the legislative history of the statute and the Treasury regulations would require us so

[2] 33 B. T. A. 671.
[3] 92 F. 2d 667.
[4] See *Turner* v. *Commissioner*, 85 F. 2d 919; *Commissioner* v. *Bryn Mawr Trust Co.*, 87 F. 2d 607; *Porter* v. *Commissioner*, 60 F. 2d 673; *Bretzfelder* v. *Commissioner*, 86 F. 2d 713; *Lockwood* v. *McGowan*, 86 F. 2d 1005.

to hold. The Revenue Act of 1916 permitted the deduc-
tion of the amount of claims against the estate "allowed
by the laws of the jurisdiction . . . under which the
estate is being administered."[5] The Acts of 1918 and
1921 contain like provisions.[6] Under these Acts the
claims in question would have been deductible as enforce-
able by state law irrespective of the nature of the con-
sideration.[7] The Act of 1924 altered existing law and
authorized the deduction of claims against an estate only
to the extent that they were "incurred or contracted bona
fide and for a fair consideration in money or money's
worth."[8] Congress had reason to think that the phrase
"fair consideration" would be held to comprehend an in-
stance of a promise which was honest, reasonable, and
free from suspicion whether or not the consideration for
it was, strictly speaking, adequate.[9] The words "adequate
and full consideration" were substituted by § 303 (a) (1)
of the Act of 1926. There must have been some reason
for these successive changes. It seems evident that the
purpose was to narrow the class of deductible claims, and
we are not at liberty to ignore this purpose.

The regulations of the Treasury promulgated under the
Act of 1924 and the first edition applicable to that of 1926,
paraphrased the statutory language.[10] The 1929 edition
of Regulation 70, Art. 36, provides in part: "A pledge or a
subscription evidenced by a promissory note or otherwise,
even though enforceable against the estate, is deductible
only to the extent such pledge or subscription was made
for an adequate and full consideration in cash or its equiva-

[5] Revenue Act of 1916, § 203 (a) (1), 39 Stat. 756, 778.
[6] Revenue Act of 1918, § 403 (a) (1), 40 Stat. 1057, 1098; Revenue
Act of 1921, § 403 (a) (1), 42 Stat. 227, 279.
[7] *Atkins* v. *Commissioner*, 30 F. 2d 761.
[8] Revenue Act of 1924, § 303 (a) (1), 43 Stat. 253, 305.
[9] See *Ferguson* v. *Dickson*, 300 F. 961, 964.
[10] Regulations 68, Arts. 29, 36; Regulations 70 (1926 Ed.) Arts. 29,
36.

lent received therefor by the decedent."[11]   Since 1929 the regulations have excluded deductions such as those in issue here.   Meantime the estate tax provisions have been amended four times and the section under which the regulations were promulgated has been amended twice. We must assume that Congress was familiar with the construction put upon the section by the Treasury and was satisfied with it.   The Board of Tax Appeals[12] and the courts,[13] with the exception of the Circuit Court of Appeals for the Third Circuit,[14] have held that a promise to pay money to a charitable or educational institution, where the only consideration was a stipulated application of the amount received, does not constitute a claim against the estate contracted for an adequate and full consideration in money or money's worth notwithstanding the fact that under local law the promise is enforceable.   In this view we agree.

2. Payments pursuant to the promises are not transfers within the meaning of § 303 (a) (3).   The court below excluded the payments from the operation of that section upon two grounds.   Both, as we think, are valid.   The petitioner's payment, after the decedent's death, of a sum promised during her life, is not appropriately designated a transfer.   True the decedent has promised to make a transfer but fulfillment of the promise by the executor does not relate back to the time the promise was

---

[11] See also Regulations 80, 1934 Ed., Art. 36; Regulations 80, 1937 Ed., Art. 36.

[12] Porter v. Commissioner, 23 B. T. A. 1016, 1025; Turner v. Commissioner, 31 B. T. A. 446; Safe Deposit & Trust Co. v. Commissioner, 35 B. T. A. 259, 265.

[13] Porter v. Commissioner, 60 F. 2d 673; Bretzfelder v. Commissioner, 86 F. 2d 713; Glaser v. Commissioner, 69 F. 2d 254; Carney v. Benz, 90 F. 2d 747, 749; Lockwood v. McGowan, 13 F. Supp. 966, affirmed 86 F. 2d 1005.

[14] Turner v. Commissioner, 85 F. 2d 919; Commissioner v. Bryn Mawr Trust Co., 87 F. 2d 607, 609.

made so as to convert her promise into a transfer by her. Here the subject of the transfer was not identified by any allocation of decedent's funds during her life. This fact adds point to the view that she made no transfer.

Subsection (3) applies only to testamentary dispositions. The phrase is "the amount of all bequests, legacies, devises, or transfers" to certain specified religious, charitable, scientific, literary or educational uses. The right to the deduction is qualified by the provision "The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate." The only transfers required to be included in the gross estate are those made in contemplation of death or to take effect in possession or enjoyment at or after death.[15] In other words, only such transfers as are testamentary in character are to be included in the gross estate, and it follows that only those of that character are deductible under subsection (3). Those here in question were clearly not such. There is no claim that the agreements were made in contemplation of death or to take effect in possession or enjoyment at or after death.

3. The petitioner urges that all of the revenue acts have granted liberal deductions in respect of income tax and estate tax for contributions to charitable and educational purposes. He says that if the benefactions in question had been made in the form of bequests or gifts to take effect at death there would be no question of the right to the claimed deductions. He urges, therefore, that we

---

[15] See § 302 (c), 44 Stat. 70. "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, . . . (c) To the extent of any interest therein of which the decedent has at any time made a transfer, . . . in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. . . ." See also subsection (d), 44 Stat. 71.

should adopt a liberal construction of the Act to effectuate the intent of Congress even though the payments in question do not fall within the strict meaning of the words used. But we are not permitted to speculate as to the reasons why the policy evidenced with respect to other forms of gift was not extended to claims upon promises enforceable by state law. We are bound to observe the alterations made in the successive acts which, in the plain meaning of the language employed, exclude deduction of enforceable claims of the sort here involved, even though the case be a hard one. The testatrix was bound to bring her transactions within the letter of the statutory provisions and the regulations at the risk that non-compliance might deprive her estate of tax immunity as respects the pledges.

The judgment is

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.