COMMONWEALTH THEATRES CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101549. Promulgated October 31, 1941.

*A. F. Schaetzle, Esq.*, and *C. P. M. Allen, C. P. A.*, for petitioner.
*W. Frank Gibbs, Esq.*, and *Angus Roy Shannon, Jr., Esq.*, for the respondent.

#### OPINION.

ARNOLD: The Commissioner determined a deficiency of $2,191 in income tax for the calendar year 1936. The only issue involved is whether the petitioner is entitled to a credit under section 26 (c) (2) of the Revenue Act of 1936. The facts were presented by stipulation, which we adopt as our findings of fact.

The petitioner is a Nebraska corporation with offices in Des Moines, Iowa. Its business consisted exclusively of the operation of a theatre and office building in Omaha, Nebraska, known as the World Theatre Building, under a long term lease. It commenced business in October 1934, with an invested capital of $46,400 consisting of capital stock of $4,400 and paid-in surplus of $42,000, all of which was paid in cash by the stockholders.

On November 13, 1934, the petitioner entered into an agreement with the World Realty Co., a Nebraska corporation, whereby it acquired a 99-year ground lease covering real estate situated at the northwest corner of Fifteenth and Douglas Streets, in Omaha, Nebraska, on which was located a modern theatre building, including commercial space consisting of four ground floor shops and a large basement in which recreation parlors were operated. The ground lease covered the period from September 11, 1917, to April 29, 2016. The purchase price for the unexpired term of the lease was $150,000, payable $50,000 in cash and the balance of $100,000 in 48 equal monthly installments beginning December 1, 1934, and ending November 1, 1938. The payments made in 1936 aggregated $24,999.98. The 48 payments were evidenced·by 48 negotiable notes executed by the petitioner, payable to the order of

World Realty Co. and bearing interest from December 1, 1934, at the rate of 5 percent per annum until maturity and 8 percent per annum thereafter. The notes were secured by a trust deed dated November 13, 1934, to the Omaha National Bank, trustee, transferring, conveying, and assigning to the trustee all right, title, and interest of petitioner in the property above referred to as evidenced by the lease dated September 11, 1917, and all leases of the property or any part thereof then in existence or thereafter to be executed by the petitioner, "together with all rents, issues and profits thereof", and the buildings and improvements on the premises or which may be erected thereon. The trust deed provided, *inter alia*, as follows:

7. In case of a default hereunder as aforesaid, the "Trustee" shall have the right to immediately take possession of the mortgaged property and collect the rents, issues and profits therefrom and apply the same to the performance of the 99 year lease, to the payment of taxes on the mortgaged property, the repayment of any advances or other sums due from the "Mortgagor" hereunder, to the payment of any and all costs and expenses incurred in collection of said rents, issues and profits or in enforcement of the remedies herein provided, and to the payment of the notes secured hereby. To enable the "Trustee" to exercise this power, the "Mortgagor" will forthwith upon demand of the "Trustee" turn over to the "Trustee" all leases and records pertaining to the mortgaged property and all fixtures and appliances necessary to enable the "Trustee" to hold, operate and administer the property.

The petitioner, in connection with the trust deed, assigned on November 13, 1934, all subleases acquired from the World Realty Co. to the Omaha National Bank, trustee. On the same date it also assigned all the rents from the World Theatre Building to the trustee, which assignment contained the following provisions:

FOR AND IN CONSIDERATION of the sum of One Dollar to it in hand paid, receipt whereof is hereby acknowledged, and the further securing of the debt hereinafter referred to, COMMONWEALTH THEATRES CORPORATION does hereby sell, assign, transfer and set over to OMAHA NATIONAL BANK, TRUSTEE, the rents, issues and profits of the following described real estate, situated in the City of Omaha, Douglas County, State of Nebraska, to-wit:

\*      \*      \*      \*      \*      \*      \*

PROVIDED THAT, Whereas the Commonwealth Theatres Corporation has executed and delivered to World Realty Co., forty-eight notes of even date herewith in the aggregate principal amount of $100,000.00 bearing interest at the rate of 5% per annum before maturity and 8% per annum thereafter and secured by a Trust Deed of even date herewith executed by Commonwealth Theatres Corporation to Omaha National Bank, Trustee, covering all the right, title and interest of the Commonwealth Theatres Corporation in and to the above described property, it is agreed that unless and until default is made by the Commonwealth Theatres Corporation in the payment of principal or interest of any of the said notes or in the performance or observance of any of the terms, provisions or conditions in the said Trust Deed or in this assignment contained, the Commonwealth Theatres Corporation shall have the right to collect and receive the rentals accruing from said property prior to any such default, as and when and

only as and when such rental becomes due and payable under the terms of said leases on said premises.

In the event of any default by the Commonwealth Theatres Corporation in the payment of interest or principal of any of the above mentioned notes or in the performance of any of the terms, provisions or conditions of the above mentioned trust deed or of this Assignment, and if any such default shall continue for fifteen (15) days, the Omaha National Bank, Trustee, shall have and is hereby given the right to take and keep possession of the said premises and to collect all the rents, issues and profits thereof either by its officers or by any other person duly authorized by it as agent for that purpose until all of said above mentioned notes and Trust Deed shall have been fully paid and satisfied; and the Commonwealth Theatres Corporation hereby makes, constitutes and appoints the said Omaha National Bank, Trustee, its attorney-in-fact, giving unto said attorney power irrevocably, either in its own name or in the name of Commonwealth Theatres Corporation to take all necessary steps by proceedings in court or otherwise, to collect all rentals, to cause the said premises to be vacated, and when vacant to relet said premises and to do all such things either by its own officers or by other parties duly authorized and appointed by it as agent for said purposes, all the above at such times and in such manner and on such terms as to said attorney may seem best, with full power of substitution.

This Assignment is made in connection with the above-mentioned Trust Deed executed by Commonwealth Theatres Corporation to Omaha National Bank, Trustee, and the provisions of said Trust Deed with reference to the application of the rents, issues and profits of said property collected and received by the Omaha National Bank, Trustee and with reference to the conditions upon and subject to which the said Trustee accepts the trusts stipulated and provided for under the terms of said Trust Deed shall apply to and in connection with this assignment of leases to said Trustee.

During the years 1934 to 1936, inclusive, all of the provisions of the trust deed were complied with.

From the inception of petitioner in October 1934 to December 31, 1936, its cash receipts and disbursements were as follows:

| | Oct. to Dec. 31, 1934 | 1935 | 1936 |
|---|---|---|---|
| Cash on hand at beginning | | $1,113.58 | [1] ($2,243.20) |
| Cash received: | | | |
| Sale of capital stock | $4,400.00 | | |
| Paid-in surplus | 42,000.00 | | |
| Loan from stockholder | | $1,000.00 | |
| Rents from World Theatre Building | 26,730.00 | 66,110.00 | $65,887.53 |
| Total cash received | 73,130.00 | 67,110.00 | 65,887.53 |
| | 73,130.00 | 68,223.58 | 63,644.33 |
| Cash disbursed: | | | |
| Payments on lease purchase contract | $54,166.66 | $25,000.00 | $24,999.98 |
| Ground rent | 12,500.00 | 25,000.00 | 25,000.00 |
| Taxes | 2,926.83 | 12,547.86 | 10,278.45 |
| Interest | 842.00 | 4,322.91 | 3,090.92 |
| Building improvements | | 364.03 | |
| Income taxes | | 1,100.78 | 2,149.57 |
| Other expenses | 1,580.93 | 2,131.20 | 4,392.76 |
| Total disbursements | 72,016.42 | 70,466.78 | 69,911.68 |
| Cash on hand at end | 1,113.58 | [1] (2,243.20) | [1] (6,267.35) |

[1] Overdraft.

Its earned surplus computed on the accrual basis was as follows:

| | |
|---|---|
| Nov. 13 to Dec. 31, 1934 | $2, 766. 48 |
| 1935 | 10, 692. 95 |
| 1936 | 14, 203. 98 |
| Total earned surplus Dec. 31, 1936 | 27, 663. 41 |

The only question involved is whether the petitioner is entitled to the credit allowed by section 26 (c) (2) of the Revenue Act of 1936. This section provides for the allowance of a credit in determining undistributed net income for the purpose of computing undistributed profits surtax of:

\* \* \* An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. \* \* \*

Admittedly, in *G. B. R. Oil Corporation*, 40 B. T. A. 738; *Michigan Silica Co.*, 41 B. T. A. 511; *Joell Co.*, 41 B. T. A. 825; *Strong Manufacturing Co.*, 41 B. T. A. 1273; *Baltimore Steam Packet Co.*, 44 B. T. A. 629; and *Meridian & Thirteenth Realty Co.*, 44 B. T. A. 865, relied upon by petitioner, wherein taxpayers claimed the credit under section 26 (c) (2) and prevailed, there were written provisions in contracts requiring that earnings be applied on the debt, whereas in this proceeding there is no such express provision in the trust deed or the assignment. It is contended by the petitioner that the lack of such an express provision is no basis for distinction because petitioner was legally in the same position as the taxpayers in the above cases. It is argued that, not having any assets other than the 99-year lease and no income other than rent from the subleases thereunder, it was required, in order to fulfill its contractual obligations and avoid default, to use its rent income for the payment of the 12 notes falling due in 1936, interest, ground rent, and local taxes.

The use of the rent income by petitioner to meet its obligations under the trust deed and assignment was not actuated or compelled by an express contractual requirement. What was said in *Campbell Transportation Co.*, 43 B. T. A. 417, 422, is apposite here:

\* \* \* The mere fact of repayment or setting aside of funds does not satisfy the terms, and we think the intent, of the statute. Unless it was *required* by the contract to be paid or irrevocably set aside, the petitioner would be free to elect whether to so treat its earnings or to pay dividends. Such is not the situation contemplated by the statute, which concerns itself, as we said in the *G. B. R. Oil Corporation* case, with contracts which "*inevitably require* in their performance a drawing on current earnings." [Italics supplied.] \* \* \*

Deductions are a matter of legislative grace and a taxpayer seeking a deduction must bring himself within the letter of the statutory provisions. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Taft* v. *Commissioner*, 304 U. S. 351.

The 99-year lease, subleases, and rents were assigned to the trustee by petitioner as security for the performance of its contract with the World Realty Co. The petitioner had the right to collect and receive the rentals and it was expressly so provided in the assignment. It was in no way restricted in the use of such rentals. The trustee had no right under the assignment of rentals to collect or receive the rentals unless and until default in the payment of the principal of notes, interest, and other payments required to be made by the trust deed and assignment occurred and continued for fifteen days. Until default occurred and continued for fifteen days the petitioner had the unrestricted right to the rents and was not required to surrender possession of its property or income. Such a contract does not "inevitably require" in its performance the use and application of petitioner's rental, "thus removing current earnings as a source of dividend payments." *G. B. R. Oil Corporation, supra.* Such a contract does not meet the requirements of section 26 (c) (2). *Artesian Water Co.*, 43 B. T. A. 408. That the petitioner had no cash with which to pay dividends and its cash account was overdrawn is not material. It had earned profits of $14,203.98 in 1936. The petitioner was free in the taxable year to dispose of such earned profits as it saw fit.

We therefore hold that petitioner is not entitled to the credit provided for in section 26 (c) (2) of the Revenue Act of 1936. The Commissioner's action in disallowing the credit is approved.

*Decision will be entered for the respondent.*