DEPOT INVESTORS LTD., GAF DEVELOPMENT COMPANY, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Depot Investors, Ltd. v. Commissioner
Docket No. 15373-90
United States Tax Court
T.C. Memo 1992-145; 1992 Tax Ct. Memo LEXIS 193; 63 T.C.M. (CCH) 2344; T.C.M. (RIA) 92145; March 11, 1992, Filed *193 Decision will be entered under Rule 155. Robert D. Woods, for petitioner. Cheryl B. Harris, for respondent. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Depot Investors, Ltd. (the partnership), is an Oregon limited partnership for which the provisions of sections 6221-6233 are applicable. On April 23, 1990, respondent issued a notice of final partnership administrative adjustment (FPAA) to the partnership's tax matters partner, GAF Development Co. (GAF). The explanation of items form attached to the FPAA proposed the following adjustments to the partnership's 1982 return: (1) Disallowance of $ 580,139 claimed as qualified rehabilitation expenditures because the rehabilitated building is not a "qualified rehabilitation building", which results in the total disallowance of a rehabilitation tax credit or, in the alternative, if the rehabilitated building does qualify, reduction of the qualified rehabilitation expenditures by $ 240,085 and reduction of the rehabilitation credit percentage from 25 percent to 20 percent; and (2) disallowance of $ 20,044 reported as land lease expense. GAF, as tax matters partner, timely filed a petition with this Court. *194 The issues are: (1) Whether the partnership is entitled to include a qualified rehabilitation credit under section 48(g) on its partnership return for the taxable year 1982 and, if so, in what amount. We hold that it is not and, therefore, need not determine the amount. (2) Whether the partnership is entitled to include a deduction of $ 20,044 for the cost of certain leasehold improvements on its partnership return for the taxable year 1982. We hold that it is. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. GAF's mailing address was in Clackamas, Oregon, at the time of the filing of the petition. In December 1979, Rusty Gorman (Gorman) purchased the Southern Pacific Railroad Station, commonly referred to as the "depot", from the city of Corvallis, Oregon. Gorman paid $ 10 and incurred the obligation to either demolish the depot or remove it from the site by November 1, 1981. That deadline was later extended to November 1, 1982. Thereafter, GAF became the owner *195 of the depot through a series of transactions. In or around April 1982, GAF transferred the depot to the partnership as a capital contribution. In May 1982, the depot was moved approximately 9 blocks to its present location at 545 Second Street, Corvallis, Oregon. During 1982, the partnership spent $ 240,085 to move the depot, $ 27,385 on site preparation, $ 28,305 for the construction of a concrete parking lot, and $ 314,669 to rehabilitate the depot at its new site. The partnership opened the refurbished depot building as a restaurant in December 1982. Prior to its relocation and rehabilitation, the depot was a rectangular, one story, stone structure approximately 130 feet long by 30 feet wide with a "hip roof". A hip roof has four surfaces that peak above the vertical sides of the building and slope downward equally from a horizontal line at the top, which is parallel to the long dimension of the building. The top line where the roof's four surfaces meet is shorter than the length of the building. Thus, triangular downward-sloping roof surfaces result at both ends of the building, with longer, trapezoid-shaped roof sections running along both long sides of the rectangular *196 structure. The depot's four roof surfaces all sloped downward from the common top line at about 32 degrees from the horizontal or 58 degrees from the vertical. The opposite sides of these roof surfaces contain only a small insulated attic space, rather than living space. After the depot was relocated to its new site, nearly all of one of the long vertical walls was removed to allow for construction of a glass-walled addition projecting out from the original structure. Therefore, the resulting relocated and rehabilitated structure retains less than 75 percent of its original vertical exterior walls, unless the hip roof projection proposed by petitioner and discussed below also constitutes exterior wall area. The land adjoining the site where the depot was relocated has been owned by the State of Oregon (the State) since at least 1982. The parcel lies between the relocated building and the Willamette River. When the depot was relocated, it was positioned so that the glass-walled addition to the building faced this parcel, which angles down to the Willamette River. The State leased this parcel to W.R. Gaf and Associates (a partnership that was the predecessor in interest to GAF) *197 from July 1, 1981, to June 30, 1982. The State then leased the property to the city of Corvallis under a Land Use Permit from sometime in 1982 through June 30, 1983, and thereafter on a year-to-year basis unless canceled. The city of Corvallis leased the property to the partnership for the purpose of "landscaping and river access". This lease was made subject to the lease between the city of Corvallis and the State and was cancelable by either party on 6 months' notice. In addition, the agreement would automatically terminate upon expiration of the Land Use Agreement between the State and the city of Corvallis, or upon sale of the property by the State. OPINION An investment tax credit is allowed for "qualified rehabilitation expenditures", sec. 48(g)(2), on a "qualified rehabilitated building", as defined in section 48(g)(1). To qualify as a "qualified rehabilitated building", a building is required to, inter alia, retain 75 percent or more of its existing external walls in place as external walls in the rehabilitation process. Sec. 48(g)(1)(A)(iii). The partnership claimed an investment tax credit on its 1982 partnership return under sections 38 and 46(a) based *198 on its expenditures to relocate and rehabilitate the depot. Respondent proposes an adjustment denying any investment tax credit because the rehabilitated depot building fails the 75-percent test of section 48(g)(1)(A)(iii). In the alternative, respondent proposes reducing the credit because certain expenditures included in the rehabilitation effort by the partnership are not qualified rehabilitation expenditures under section 48(g)(2). Petitioner presented an expert, Emile Mortier (Mortier), who opined that areas equal to the extended vertical, triangular and trapezoidal rises of the roof should be included in the calculation of the area of original vertical exterior walls remaining in the rehabilitated structure. That is, a hypothetical vertical extension of the walls from where they actually end up to the height of the roof, forming two-dimensional triangular and trapezoidal areas, should be included in the 75-percent calculation. Conversely, respondent's experts, Dennis Marek and John M. Tess (Tess), contend that there is no support for such an assertion. Tess notes that section 1.48-12(b)(3)(ii), Income Tax Regs., which defines the term "external wall", does not include *199 or mention any roof surface. That section states that external walls form the perimeter of a building and do not include interior structures surrounded by the external walls. There is no mention of the vertical projection of a roof. As far as we can tell, Mortier's position is a novel one. While we understand the concept Mortier describes, we cannot agree that it falls within the intendment of the section 48(g)(1)(A)(iii). The Supreme Court has said that absent absurd, unreasonable, or futile results, there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. American Trucking Associations, 310 U.S. 534, 543 (1940). See also Taft v. Commissioner, 304 U.S. 351, 359 (1938). Webster's Third New International Dictionary (1971) defines a roof as "the outside cover of a building or structure including the roofing and all the materials and construction necessary to maintain the cover upon its walls or other support". The same source defines a wall in this context as "a vertical architectural member used to define and divide space * * *200 * esp: one of the sides of a room or building that connects the floor and ceiling or foundation and roof". These definitions connote mutual exclusivity. There is no foundation, in the legislative history or otherwise, to believe that Congress had any intention other than common usage when it used the term "wall". Section 48(g)(1)(A)(iii) is clear and unambiguous, and respondent's interpretation of it hardly yields absurd or unreasonable results. Moreover, Mortier's position simply does not pass the common sense test. We are not presented, for example, with a "mansard roof" -- which has a building surface that stands nearly vertical but slopes inward slightly extending up to a more traditional, steeply sloped roof surface. In that case, the opposite side of the nearly vertical surface contains living space, and an argument might be made that such a surface performs the function of a wall. In this case, however, only a small insulated attic space remains on the opposite sides of the traditionally sloped hip roof surfaces. We have given due consideration to the expert reports submitted by the parties, and we find respondent's experts, especially Tess, more convincing. Buffalo Tool & Die Manufacturing Co. v. Commissioner, 74 T.C. 441, 451 (1980). *201 On these facts, we hold the 75-percent calculation should not include any part of the roof area, hypothetical or otherwise. The parties stipulated that if no part of the roof or vertical roof projection is included in the 75-percent exterior wall retention test of section 48(g)(1)(A)(iii), then the requirements of that clause are not met. Since we have held that no part of the roof is includable in that calculation, then the building fails the 75-percent test in this case. Since the requirements of section 48(g)(1)(A) are conjunctive, the building cannot be a "qualified rehabilitation building" under section 48(g)(1). Thus, we hold that the partnership cannot claim a qualified rehabilitation credit for the relocated depot building on its partnership return for the taxable year 1982. Next, we address whether the partnership is entitled to include a deduction of $ 20,044 for the cost of certain leasehold improvements to the adjacent parcel of land on its partnership return for the taxable year 1982. The partnership spent $ 20,044 to clear and landscape the property in 1982. The property was directly adjacent to the relocation site, and the glass-walled addition faced this property. *202 The landscaping was intended to provide a pleasing vista for the restaurant's patrons. Section 167 provides that a reasonable allowance shall be allowed as a depreciation deduction for the exhaustion, wear, and tear of property used in a trade or business. The partnership's leasehold improvements were capital expenditures made in connection with the relocation and rehabilitation of the depot building. Trailmont Park Inc. v. Commissioner, T.C. Memo. 1971-212. During the year at issue, section 1.167(a)-4, Income Tax Regs., allowed cost recovery of leasehold improvements to occur over the shorter of the remaining useful life of the asset or the remaining term of the lease. Trailmont Park Inc. v. Commissioner, supra.Petitioner's lease term would have expired in 1982 upon the occurrence of any one of a number of events, including certain unilateral actions by the State or city of Corvallis. Under these facts, we hold that there was not a reasonable probability that the lease term would be extended. Sec. 178(b). Thus, we hold that the partnership is entitled to a deduction of $ 20,044 for the cost of the leasehold improvements in 1982. *203 Decision will be entered under Rule 155.