JAMES M. WILLIAMS ET AL. V. H. P. HOWARD AND
J. L. HUME, ADMINISTRATORS.

No. 1880.

1. **Administration De Bonis Non—Validity.**—The Act of February 3, 1840, allowed the Probate Court upon good cause shown to extend the term of an administration beyond the one year, but did not fix the time within which such order of extension should be made, nor the period of time—which was five years under the Louisiana law previously in force in Texas—during which a succession might be kept open. *Held*, where an administration was granted in April, 1839, and, without any formal order of extension, kept open about three years, when the administrator died, leaving the estate unsettled, the appointment of his successor in February, 1844, was not void, but within the power of the court.

2. **Land Certificate—Locative Contract—Jurisdiction of Probate Court.**—The Probate Court had power in 1849 to authorize the administrator to contract for the location of a land certificate belonging to the estate, the locators to have a part interest in the land, and also authority to afterwards (1861) order the execution of the necessary conveyance by the administrator to complete such contract.

3. **Same—Community Interest of the Wife Bound.**—A contract for the location of a land certificate made by the administrator of the husband is binding on the community interest of the wife therein.

4. **Probate Proceedings—Two Estates in One Administration.**—The including of two estates in one administration, although irregular, will not, if the court had jurisdiction of both estates, render the proceedings therein void when called in question collaterally.

5. **Probate Partition—Heirs Not Necessary Parties, When.**—Where a partition of land belonging to an estate is made by Probate Court between a locator of the land and the estate, the heirs of which are unknown, the fact that such heirs are not made parties to the proceeding will not render the judgment therein void.

APPEAL from Cooke.    Tried below before Hon. D. E. BARRETT.

*Charles D. Grace,* for appellants.—1.   At the time of the opening of this succession, on March 1, 1839, the Act of the Congress of the Republic of Texas, on the 20th day of December, 1836, adopting the probate laws of the State of Louisiana, was in force, and the act itself requiring that the succession be closed within twelve months from time of granting letters of administration, unless for good reasons shown to the court why it should be continued longer, it was imperative on the court to compel the closing of said succession within the twelve

months, and was not in the power of the court to extend said succes-
sion beyond the limit of five years. Dodge v. Phelan, 21 S. W. Rep.,
309; Murphy v. Menard, 14 Texas, 62; Partis v. Cummins, 14 Texas,
139; Boyle v. Forbes, 9 Texas, 36; Flores v. Howth, 5 Texas, 329.

2. It was incompetent for the Probate Court to permit the merging
of the two distinct and separate estates and have them administered
as one. Hart. Dig., art. 1007, sec. 13, Act 5, February, 1840; Sayles'
Early Laws, art. 733, sec. 18, p. 365.

3. If Thomas C. Bean located said certificate and obtained the pat-
ent from the State for the land, he acquired no interest in the land by
virtue of such services, yet the owner of the certificate might be lia-
ble on a money demand, if action was brought in time by said Bean
in the proper form. Byrne v. Sampson, 74 Texas, 79; Boone v. Hul-
sey, 71 Texas, 176; Grimes v. Smith, 70 Texas, 221, 222; House v.
Brent, 69 Texas, 27; Ross v. Mitchell, 28 Texas, 150; Sypert v. Mc-
Cowen, 28 Texas, 640; Branch v. Jones, 22 S. W. Rep., 245.

4. The Probate Court has no power to decree specific performance
when the obligation or contract sought to be enforced was not made by
the decedent in his life-time. Pasch. Dig., art. 1313; Houston v. Kil-
lough, 80 Texas, 296; Teal v. Terrell, 48 Texas, 491; Norris v. Dun-
can, 21 Texas, 596; Flannigan v. Pierce, 27 Texas, 78; Peters v. Phil-
lips, 19 Texas, 75; Shannon v. Taylor, 16 Texas, 413.

*Davis & Garnett* and *Taylor, Galloway & McGrady*, for appellees.—1.
The Probate Court having recognized the succession and the acts of
its administration as valid, the validity of such acts or of the admin-
istration can not be called in question collaterally. The facts author-
izing, as well as the orders of the court continuing the succession, will
be presumed in a collateral proceeding after many years. Guilford v.
Love, 49 Texas, 715; Weems v. Masterson, 80 Texas, 45; Dancy v.
Stricklinge, 15 Texas, 557.

2. It was not proper for the Probate Court to make any order con-
tinuing or discontinuing the administration until the lapse of one year
after the granting of the first letters. Bartlett v. Cock, 15 Texas, 471;
Martin v. Robinson, 67 Texas, 376; Hart. Dig., arts. 1026, 1029, 1069;
Boyle v. Forbes, 9 Texas, 36; Harrison v. Knight, 7 Texas, 54.

3. When the Probate Court has jurisdiction over the parties and
subject matters, it has the power to administer two of the estates
together, or rather to allow an administrator of two estates to make
reports including matters pertaining to both estates, and to act on
such reports. It will be presumed that the court did its duty, and al-
lowed no improper charges against either estate. Grande v. Harrera,
15 Texas, 534; Saul v. Frams, 22 S. W. Rep., 984.

4. The administrator had the authority, either with or without the
approval of the court, to enter into a contract with Thomas C. Bean,
whereby he would furnish the land certificates belonging to said estate,
and said Bean would have the same located, surveyed, patented, and

pay the charges thereon, and receive therefor one-third of the land so acquired, provided such contract was reasonable and for the best interests of the estate. Wren v. Harris, 78 Texas, 349; Murrell v. Wright, 78 Texas, 519; Ikard v. Thompson, 81 Texas, 285; Bennett v. Land Co., 1 Texas Civ. App., 321; Ellis v. Stone, 23 S. W. Rep., 1102; Gibbon v. Bell, 45 Texas, 417; Portis v. Cole, 11 Texas, 159; Poor v. Boyce, 12 Texas, 440; Jones v. Lewis, 11 Texas, 360; Caldwell v. Young, 21 Texas, 800.

5. Bean and the estate of Bushnel Garner, deceased, owned jointly the league and labor of land, and it was within the power of the Probate Court where the estate was being administered to partition the same between them. There is no question of specific performance to convey land, in such a case. Acts 1848, Pasch. Dig., art. 1367; Ellis v. Rhone, 17 Texas, 132; Guilford v. Love, 49 Texas, 715.

HEAD, ASSOCIATE JUSTICE.—A short time prior to March 2, 1839, Bushnel Garner died intestate in the Republic of Texas, and on said date James M. Garner filed with the Probate Court his application for letters of administration upon his estate, which was granted April 29, 1839, and appraisers appointed. The administrator filed his bond April 30, 1839.

March 31, 1840, an order was entered approving a claim in favor of Joshua Bowerman for $3.33. May 25, 1840, an order was entered approving a claim in favor of Joel Sowell for $6. July 27, 1840, the appraisers filed their report, showing property amounting to $1634, in which was included one league and labor land certificate, valued at $1000.

December 28, 1840, the administrator, on motion of John Hart, one of his securities, was cited to give a new bond. January 25, 1841, an order was entered reciting that the administrator had appeared and made partial settlement of the estate, and was granted until the next term to make further settlement thereof. The report upon which this order was entered showed outstanding debts due by the estate to different parties, and also uncollected claims due from different parties to it. February 22, 1841, an order was entered releasing John Hart from the administrator's bond, and approving a new bond filed by him, and granting the administrator until the next term of the court to make final settlement. May 31, 1841, an order was entered approving a partial settlement made by the administrator, and granting him until the next term of the court to make further settlement.

June 28, 1841, the administrator was granted permission to sell 1280 acres of the land certificate, to pay debts of the estate. February 28, 1842, upon the petition of the administrator, he was granted until the June Term next ensuing in which to make final settlement.

February 26, 1844, J. M. Garner, the former administrator, having died, Jefferson C. Parish was appointed administrator of the estate of Bushnel Garner, deceased, and his bond as such was approved on same

day.   At the November Term, 1845, this administrator was cited to appear and make report at the next term.   January 31, 1848, an order was entered granting Jefferson C. Parish, administrator of the estates of Bushnel Garner, deceased, and James M. Garner, deceased, time to settle the said successions until further order of the court.

November 26, 1849, the administrator filed his report, which, among other things, set forth that he had "filed with T. C. Bean for location the headright certificate of B. Garner." This report was endorsed, "Sworn to in open court 26th of November, 1849. Examined and approved.   J. G. Thomas, Chief Justice, F. C., Texas."

September 30, 1850, an order was entered citing the administrator to make report.   November 28, 1853, an order was entered approving a report filed by J. C. Parish, administrator of the estates of J. M. and B. Garner, deceased.   In this report it was recited, "that the land belonging to Bushnel Garner is in process of location," and further time to make final settlement was asked.

March 26, 1860, the administrator was ordered cited to make settlement at the next term of the court.   March 26, 1860, the administrator filed his report, in which, among other things, appears the following:   "Petitioner further avers, that the said land certificate (referring to the Bushnel Garner certificate) was located and patent secured by one Thos. C. Bean, of said Fannin County, under a contract with this pr. for one-third of the same, which was at the time the custom of the country.   Petitioner therefore prays, that commissioners be appointed to divide said land between said Thos. C. Bean and the heirs of said estates, whose names and residences are unknown to this pr., according to quantity and quality, and that publication be made of this application, and that upon final hearing this petitioner be fully discharged from the responsibilities of his said trust," etc.

Upon this petition the following order was entered:   "Monday, April 30, 1860.   Estate of J. M. and B. Garner, deceased, J. C. Parish, administrator.   Petition for final settlement, sale, and division of land. It is ordered by the court, that this cause be continued to the next regular term of this court, and that notice be given as the law directs; and further, it is ordered by the court that Daniel Montague, Elijah Peery, and Thomas Peery be appointed commissioners to divide a league and labor of land between Thomas C. Bean and the unknown heirs of J. M. and Bushnel Garner, deceased, in the following proportion, to wit, one-third of said land to Thomas C. Bean and two-thirds of said land to said heirs, taking into consideration quantity, etc.," giving field notes of the entire survey.

May 28, 1860, it was ordered that the cause be continued to the next term of the court for report of the commissioners appointed at the previous term.   June 25, 1860, another continuance was ordered.   July 30, 1860, another continuance.   August 27, 1860, another continuance.

February 12, 1861, W. L. Parish filed his application reciting the death of Jefferson C. Parish, and asking that he be granted letters de

bonis non upon the estates of James M. and Bushnel Garner, deceased. March 25, 1861, an order was entered appointing W. L. Parish, "administrator of the estates of J. M. and B. Garner, deceased, and that he give bond in the sum of $5000." The bond was filed on same day, and was "conditioned, that whereas, the above bound W. L. Parish has been appointed administrator de bonis non of the estates of Bushnel and James M. Garner, deceased, now, if the said W. L. Parish shall well and truly perform all of the duties required of him under said appointment, then this obligation to be null and void; otherwise, to be and remain in full force and effect."

March 25, 1861, Thomas C. Bean filed in the Probate Court of Fannin County his petition, setting forth, that on the 1st day of January 1855, he entered into a contract in writing with Jefferson C. Parish, administrator of Bushnel and J. M. Garner, deceased, for the location of the Bushnel Garner certificate, by which he was to receive one-third of the land; that he had complied with his part of the contract, and had located the certificate and obtained patent thereon. He asked that William L. Parish, administrator of said estates, be required by a decree to make petitioner a deed to one-third of said survey, and that commissioners be appointed to make partition thereof.

March 25, 1861, the following order was entered: "Estate of J. M. and B. Garner, deceased, W. L. Parish, administrator. Petition for final settlement, sale, and division of land. It is ordered by the court, that this cause be continued to the next regular term of this court, and that notice be given as the law directs; and further, it is ordered by the court that Daniel Montague, Elijah Peery, and James Peery be appointed commissioners to divide a league and labor of land between Thomas C. Bean and the unknown heirs of J. M. and Bushnel Garner, deceased, in the following proportions, to wit: one-third of said land to Thomas C. Bean, and two-thirds of said land to said heirs, taking into consideration quality, etc. [here follow field notes of land]; and further, it is ordered by the court that they make report of their action as such commissioners at the next regular April Term, 1861, it being on the —— day of April, 1861. The said W. L. Parish having come forward and acknowledged service on writ this day issued against him as administrator of the estate of J. M. and B. Garner, deceased, and manifested his willingness in open court for a division of said land belonging to said Garner's estate." * * *

May 27, 1861, the commissioners appointed by the preceding order filed their report setting aside to Thomas C. Bean 1535 acres by field notes, and upon the same day an order was entered approving it, and directing the administrator to make deed in compliance therewith, which he immediately did. A number of orders were subsequently entered, directing the sale of other parts of the land for the payment of debts, etc.

Appellees instituted this suit in the court below as administrators of the estate of Thomas C. Bean, deceased, to recover of appellants,

who claim to be heirs of Bushnel Garner and his wife, the 1535 acres set aside to their intestate as aforesaid, and upon the title above shown, judgment was rendered in their favor, from which this appeal is prosecuted.

We are of opinion that the record in this case does not show such complete administration of estate of Bushnel Garner by J. M. Garner, the first administrator, as would make void and subject to collateral attack the appointment of Jefferson C. Parish as administrator thereof, made in 1844, upon the death of his predecessor.    Under the laws of Louisiana, which were in force here at that time, Garner's appointment was only for one year, and his securities only bound themselves for his acts during that time.    To extend the administration, a new order by the court, and a renewal of his security by the administrator, were required.    Flores v. Houth, 5 Texas, 332.

Before the expiration of the year, in this instance, however, the Act of February 5, 1840, was passed, which contained the provision, "That the term for the administration of the succession is fixed at one year from the day of appointment of the administrator, or the granting letters testamentary, but the court may extend the time on good cause shown;" and it is contended that the effect of the repeated orders made by the Probate Court shows this to have been done; and as that act did not require a renewal of his security by the administrator, this was not necessary.

We think the repeated recognition by the court of this as a subsisting administration was a sufficient compliance with that part of the law which required it to extend the time for closing the succession (Soye v. McCallister, 18 Texas, 81), but are not prepared to hold that the Legislature had the power, had it undertaken to do so, to extend the liability of the administrator's securities beyond the time for which they contracted under the law as it then existed.    Murphy v. Menard, 14 Texas, 62.    It will be observed, however, that on February 22, 1841, the administrator in fact gave a new bond in answer to a motion made by one of his former securities to be released, and from this time it would seem that no substantial objection could be urged to the legality of his acts.    The Act of 1840 did not fix the time after the expiration of the year within which the court should act in extending time to the administrator, and it would therefore seem that the most that could be claimed would be that his powers would be suspended between the expiration of the first year and the grant of the extension.

We must therefore hold, that if upon the death of the first administrator the succession had not been closed, and there existed a necessity for further administration, there was nothing in the way of the appointment of an administrator de bonis non in this as in ordinary cases. That there was in fact such necessity we think reasonably appears from the recitals in the orders copied above.    At any rate, we are satisfied that it can not be affirmed from the record that there was no such necessity, and therefore the action of the court in making the appoint-

ment must be accepted as conclusive of the question upon a collateral attack. Martin v. Robinson, 67 Texas, 368; Guilford v. Love, 49 Texas, 715.

But even if it could be held that Garner's acts as administrator were unauthorized and void after the expiration of a year from the date of his appointment, we are not prepared to hold that the appointment of his successor in 1844, less than four years thereafter, would be a nullity. The estate had not in fact been fully administered. Even under the laws of Louisiana, the court had the right to keep the succession open as long as five years, while by the Act of 1840 the time was not definitely fixed. Under such circumstances, we think it should not be held that the court would be without power to appoint a new administrator to close an estate only partially administered, simply because the former administrator had died after the expiration of the year and before his time had been extended. On the contrary, we think the court would at least have the same power to appoint a new administrator in such case as it would have had to extend the time of the old had he not died.

Having thus arrived at the conclusion that the appointment of Jefferson C. Parish as administrator was not void, the next question we are asked to decide is, whether or not he had the power as such to contract with Bean for the location of the land certificate for an interest therein.

It will be observed that in 1849 it was reported to the court by the administrator that this certificate had been filed with Bean for location, and this report was approved by the Chief Justice. At this time the certificate was personal property. In defining the powers of independent executors, it has frequently been said that they can do anything without an order of the court that an ordinary executor can be authorized to do by one. McDonough v. Cross, 40 Texas, 280. It has been authoritatively decided (Murrell v. Wright, 78 Texas, 519) that an independent executor, without an order, has the power to make contracts of the kind in controversy, from which it would seem to follow that a similar contract when made by an administrator and approved by the court would not be invalid. The decisions of the Court of Civil Appeals for the Fourth District in Jack v. Cassin, 9 Texas Civil Appeals, 228, and for the Fifth District in Halbert v. Carrall, 25 Southwestern Reporter, 1102, will be found to go far toward sustaining contracts of this class. Also see Wren v. Harris, 78 Texas, 351, in which it was held that a guardian had power to make contracts of this kind.

It will also be observed that in 1860, Parish, as administrator, filed his report, among other things, setting forth the terms of this contract with Bean, and asking that commissioners be appointed to make partition between him and the heirs of the estate in accordance therewith. This report was approved and commissioners appointed to set aside to Bean one-third and to the heirs two-thirds of the land, de-

scribing it by field notes. The validity of that contract was thus adjudicated, in so far as the court in the manner attempted had the power to pass thereon, and from that adjudication no appeal was taken. The administrator, however, died before the actual division was made, and W. L. Parish, on March 25, 1861, was appointed by one order administrator de bonis non of the estates of J. M. and Bushnel Garner, and gave only one bond as such. This administration is attacked as void for this irregularity.

That the proceeding was irregular is not to be questioned. In Grande v. Herrera, 15 Texas, 538, however, it is said: "The grant including two estates under one administration is something of a novelty, but would not be void, either in whole or in part, if the court had jurisdiction over both estates." Approving this as a correct statement of the law upon the subject, we hold the proceedings in this novel administration not to be void when called in question collaterally.

After W. L. Parish had qualified in this manner, Thomas C. Bean filed his petition in the Probate Court setting forth his contract with the previous administrator, and asking for partition in accordance therewith, and that the administrator be required to make deed for his share. The court appointed the commissioners as prayed for, and ordered them to set aside for Bean one-third and for the heirs two-thirds of the land. The commissioners at a subsequent term made report partitioning to Bean the 1535 acres in controversy, and this report was approved and the administrator ordered to make deed therefor, which he on the same day did in regular form.

In addition to the objections above suggested, it is urged that these proceedings were void, and could confer no rights upon Bean, because under the Act of 1848 the Probate Court was only given jurisdiction to order the carrying out of contracts made by the deceased in his lifetime. The specific grant of power given in article 1313, Paschal's Digest, does seem not to extend beyond the class of contracts named. If, however, we are right in the conclusion that the County Court, by virtue of its general probate jurisdiction, had the power to authorize the administrator to contract for the location of a land certificate upon the shares, it is clear it would also have the power to authorize the making of the necessary conveyance to complete such contract when made.

Bean, then, by his contract with the administrator, subsequently approved by the court, became a part owner of the land with the estate; and under such circumstances, there can be no serious question as to the power of the Probate Court to make partition between them. Pasch. Dig., art. 1367. The failure to make the heirs parties to such a proceeding, if it be conceded that the record shows this not to have been done, which we do not decide, would not subject the judgment rendered therein to collateral attack. Guilford v. Love, 49 Texas, 732.

It is also urged, that the administrator of Bushnel Garner's estate could not make a contract for the location of this certificate which

would be binding upon the community interest of Garner's wife. We fail to appreciate the force of this objection. An administrator upon the husband's estate takes charge of the community property, and it is his duty to care for and preserve it. The expense of doing this is charged to the whole property, and not wholly to the husband's share. Had the administrator, for the preservation of this certificate, paid for its location with money in his hands, the sum so expended would have been charged to the entire fund, the wife thus being required to bear her share of the expense; and in like manner she must bear her share when the payment is made with a part of the certificate.

It must be borne in mind that this certificate was in the hands of the administrator for administration purposes, and it is not the case of an ordinary tenant in common making a contract with a third party for the location of the whole in consideration of a part.

*Affirmed.*

Delivered May 25, 1895.