**Dorothy Ann STAPF et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 2734.

United States District Court
N. D. Texas,
Amarillo Division.

Aug. 8, 1960.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., W. B. West, III, U. S. Atty., Fort Worth, Tex., for defendant.

DOOLEY, District Judge.

### Statement.

Lowell H. Stapf, being a resident for many years in Texas, died testate on July

29, 1953, and his will was thereafter duly probated in Potter County, Texas. The executrix and executor (simply executors herein), named in said will, duly qualified and timely filed an Estate Tax Return and paid the federal tax on the estate as computed in such return. Some months later the executors were notified by the District Director of Internal Revenue that a deficiency had been assessed and was claimed, materially increasing the tax against said estate. The alleged deficiency resulted principally from increasing the reported value of real estate and business property, reducing by half the full deductions taken for community debts, apportioning administrative expenses and attorneys' fees, which had been taken as a full amount deduction, and the denial of a marital deduction claimed in the return. These points of contention will be taken up separately and more in detail later herein.

The executors paid the amount of the deficiency assessed, plus interest, and have brought this suit to recover the amount of alleged overpayment in the amount demanded and collected by the District Director of Internal Revenue over the lawful tax liability of the estate.

This case will be determined under the Internal Revenue Code of 1939, as amended.

#### The Decedent's Will.

The most pertinent parts of the decedent's last will and testament will be dealt with in numbered sequence and are quoted or stated, as follows:

#### I.

"My estate consists of both separate and community property. It is my purpose, in making testamentary disposition of my estate, to dispose of my separate estate and to dispose of the entire community estate as though it were my separate property, and my wife is requested to take under this will and waive her right to one-half of the community property. In the event she does not elect to take under this will, then my interest in the community estate and my separate property shall be held by the trustees hereinafter appointed for the benefit of my children, other than Lowell H. Stapf, Jr., share and share alike, and my wife shall not receive any part of my interest in the community property or any interest in my separate property."

#### III.

This section provides a pecuniary legacy and a bequest of certain machinist tools to the decedent's son, Lowell H. Stapf, Jr.

#### IV.

"I give, devise and bequeath to my beloved wife, Dorothy Ann Stapf, our personal automobile and one-third (⅓) of all the residue of my estate remaining after the bequest to Lowell H. Stapf, Jr., above set forth, and the bequest to her of our personal automobile."

#### V, VI and VII.

These sections devise and bequeath the residue of the decedent's estate to the executors in the capacity of trustees for the use and benefit of Lee Dale Stapf, Donald Eric Stapf and Sylvia Rose Stapf, children of the decedent and his widow, to be managed as three separate but equal trust estates, and give directions, confer powers and detail the duties of the trustees.

#### IX.

This section appoints Dorothy Ann Stapf and B. T. Ware II independent executrix and executor of the will and estate of the decedent, they having been appointed trustees also as just stated.

#### XII.

In this section the decedent directed his executors "to pay all and not merely one-half of the following debts and charges out of my one-half part and share of our community property and estate, to-wit: All funeral expenses; all costs of administration incurred in connection with the administration of my estate, or as the result of my death, including, but not limited to, costs of court, attorneys' and accountants' fees; all debts owing by me, whether community or separate, all federal estate taxes attributable to my estate, and all state inheritance taxes attributa-

ble to the bequests and devises herein contained in Sections III and IV."

The quoted provision next above is immediately followed by terms which forbid recourse to the testator's separate property for payment of the items enumerated above "unless and until my one-half share and part of all community property has been exhausted," and which also forbid recourse to his widow's part of the community property and estate for the payment of any such items "until and unless my one-half share and part of our community property has been first exhausted and then my separate property has been next exhausted, except as hereinafter provided in the event my wife, Dorothy Ann Stapf, elects not to take under this will." The next and last provision in said section of the will is that all of the property devised and bequeathed in Sections III and IV of the will shall be taken free of liability on the items presently named, "provided, however, that in the event my wife, Dorothy Ann Stapf, does not elect to take under this will then one-half of all debts of my estate, funeral expenses and costs of administration shall be charged to the one-half share and portion of the community estate of my marriage with Dorothy Ann Stapf vested in the said Dorothy Ann Stapf in accordance with the laws of the State of Texas."

The widow elected to take under the said will.

### The Issues.

*Life Insurance*

The decedent, as insured, held three life insurance policies at the time of his death, all issued before the marriage of decedent and his surviving widow on December 22, 1945, each of the three for a face amount of $5,000, and at the time of his death the first was payable to his said widow, and each of the other two were payable to the widow and two of his children.

The premiums on the first policy were paid in the proportion of 16/20ths from his separate property before his said marriage and 4/20ths from the community property after his said marriage. The premiums on the second of such policies were paid in the proportion of 11/18ths from his separate property before his said marriage and 7/18ths from community property after his said marriage. The premiums on the third policy were paid in the proportion of 4/11ths from his separate property before his said marriage and 7/11ths from the community property after his said marriage. In the Estate Tax Return the three policies were inventoried, but only on the basis of $2,500 for each policy and the stated reason was that the premiums thereon were paid from community funds of the decedent, but the examining officer of the Internal Revenue Service changed the amount to $5,000 for each policy, and the stated reason was that the policies were acquired prior to the marriage of decedent and his surviving spouse, therefore, the total amount was deemed includible in decedent's gross estate. Neither action was correct and, instead, the proper course is to allocate to the estate that part of the total insurance monies measured by the same proportion as the sum of the premiums paid from the decedent's separate estate, plus one-half of the premiums paid from the community estate bear to the total amount of all premiums paid.[1]

*Community Debts and Administration Expenses*

The Estate Tax Return reported community debts in the aggregate of $32,-367.52. This was scaled down a half by the examiner and the reason stated was that one-half of such community indebtedness should be chargeable to the community estate share owned by the surviving spouse. The plaintiffs' rejoinder is that the decedent's will, by a lawful provision, directed that all such indebtedness should be paid from the decedent's community property share, or, if necessary, from his separate estate. This

1. Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331; Berdoll v. Berdoll, Tex.Civ.App., 145 S.W.2d 227;

Jackson, "Community Property and Federal Taxes; Southwestern Law Journal, Vol. 12, pages 43–44.

poses a rather novel question. Article 4620, Vernon's Annotated Texas Civil Statutes states that the community property of husband and wife "shall be liable for their debts contracted during marriage." This point is also echoed at more length in the authoritative decisions of the Supreme Court of Texas.[2] Section 812(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 812(b), permits the deduction of such claims against the estate "as are allowed by the laws of the jurisdiction * * * under which the estate is being administered." This statutory provision is subject to the further explanation in Treasury Regulations 105, § 81.36, as quoted in the margin.[3]

 The argument of plaintiffs that the direction in the decedent's will, purporting to shift the ordinary burden for half of the community debts from the widow's equal part of the community interest and concentrating all the indebtedness against the decedent's half of the community estate, sanctions the augmented debt liability in this case as a full legitimate deduction under the estate tax law is not a plausible stride. It will not do to say that a testator, at his own pleasure, may double the deductions by such a voluntary assumption as a testamentary device. For one thing, such a proposition would be in derogation of the federal statute and regulations which require that deductible debts must be personal obligations of the decedent at the time of his death. "If there be sufficient community property in the estate to discharge the obligations here in issue, then no more than one-half can be termed personal obligations of the decedent."[4]

█ The reference in the federal statute, previously quoted, to "the laws of the jurisdiction", by fair intendment, means the statutory system for the administration of estates or for the levy of estate or inheritance taxes in the particular state. Of course, decisional law dealing with such statutes from a tax relevant standpoint would be a ruling factor too. There is no claim made here that there is any provision in the Probate Code or the inheritance tax statute of Texas which would confer the right of a testator to double in amount the statutory deduction for debts in a state community property inheritance tax proceeding, by a testamentary expedient, such as that here in question. Instead, the plaintiffs rely on some decisional law of Texas, recognizing the effect of testamentary directions of the kind being discussed in litigation between distributees and making proper accounting and adjustment of equities between the parties, but those cases are not deemed in point in the present tax litigation.[5] There is no doubt that a testator may lawfully exercise selectivity among different portions or different devises and bequests of his estate and order an impact of liabilities resulting in disproportionate burdens, or even a total burden on the one hand and exoneration on the other, and that is true in respect to payment of taxes, even the Federal Estate Tax. In fact, plaintiffs have cited cases where such directions were given in respect to divers items, including such Estate Tax, but the distinction is that in none of the cited cases did the provisions of the will affect in the slightest the amount of such estate tax. To say that a will with such provisions is effective under the law of Texas is not at all the same thing as saying that under the laws of the State of Texas, dealing with the allowance of claims in the course of probate and administration or in levying the state inheritance tax, the law

2. Stone v. Jackson, 109 Tex. 385, 210 S.W. 953.

3. "Claims Against the Estate
 "The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, * * * and interest thereon which had accrued at the time of death. * *

Only claims enforceable against the decedent's estate may be deducted."

4. Lang's Estate v. Commissioner, 9 Cir., 97 F.2d 867, 871–872.

5. Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779; Medlin v. Medlin, Tex. Civ.App., 203 S.W.2d 635; Matthews v. Jones, Tex.Civ.App., 245 S.W.2d 974.

puts the power in the hands of a testator at will to alter the amount of deductible debt obligations up or down, depending on whether the testator chooses to assume separately all of the community debts or prefers to let the survivor of the marital community bear one-half of such liability. The Federal Estate Tax Law was revised and altered materially in 1948 with the purpose of achieving approximate equality among taxpayers in community and non-community states. It is not readily apparent how a testator in a non-community state could very well duplicate the advantage sought in behalf of the present estate. Actually, taking Texas alone, if this decedent had died intestate, no such benefit for the estate as that being dealt with could be claimed with any conviction for the estate.

It is noteworthy that for several years, 1942–1948, the Federal Estate Tax Law was cast in the general pattern which in the typical case treated all the community estate as falling within the gross estate of the first dying member of the marital community for tax purposes, and during that time the Legislature enacted a curious statute, which became Article 3683a of Vernon's Civil Statutes of Texas, and is quoted below.[6]

This short-lived statute reflected the deep-rooted tradition of the community property law of Texas that liabilities against the whole community estate should be borne half and half, in the true spirit of the marital partnership. In other words, the policy of the Federal Estate Tax Law at that time, in forcing the inclusion of the whole community properties against the first dying member for tax purposes struck a discordant note,

clashing with the fundamentals of community property law, and the Article in question obviously was enacted to afford an equalizing remedy that would, after all, divide the burden half and half, unless the contrary was directed in the decedent's will. Of course, any such direction in a will of that spent interim would not have affected the amount of the estate tax.

Another obstacle is that the decedent's testamentary decision to take all of the community indebtedness as a liability alone against his part of the community estate and, if need be, his separate estate lacks, at least as to many of the debts, the requisites of a deductible claim, since it had no adequate and full consideration in money or money's worth. Whatever support such indebtedness has from the inception consideration accrued to the decedent and his widow equally in their marital community. The debts were the outgrowth of something antecedent and it would be unnatural to assume that his part of only one-half of the underlying considerations would be sufficient as a full and adequate justification to match his declared purpose to take over all of the liability evidenced by said debts. The particular nature of such antecedent considerations will be stated more definitely later in this opinion.

Then there is the more comprehensive, and also valid, argument of the defendant to the effect that the transfer of economic interests from the decedent is the event taxed under the Estate Tax Law, and since the decedent can transfer only that portion of his property remaining after the satisfaction of his personal

6. "Whenever a Federal Estate Tax is collected under Section 811(e) (2) of the United States Internal Revenue Code, or any corresponding section hereafter enacted by the Congress of the United States, and such tax is measured in part by the value of the surviving spouse's interest in community property owned by the decedent, and such surviving spouse at the decedent's death, the executors, administrators or personal representatives of the decedent, unless the decedent directs otherwise in his or her will, shall be entitled to recover from the surviving spouse such portion of the total federal estate tax paid under said Section 811(e) (2) as the net value of the survivor's interest in the community estate included in the decedent's estate in the computation of the federal estate tax bears to the net taxable estate."

This Article was repealed in 1955, upon the adoption of the Texas Probate Code, V.A.T.S., and such repeal is noted in § 434 of said Code.

liabilities and the expenses of administering the estate, a deduction is allowed for such obligations, which necessarily reduce the quantum of transferred property. Such is not the true case, however, where decedent in his will assumes the debts of another. The effect of such a provision, if executed, would not change, in the sense of the law, the total property transferred by the decedent, but rather would only divert part of it by a gift equal to the amount of the other's assumed debts.

The above has not been said unmindful that some cases can be cited for the viewpoint that the consideration required to support certain deductible claims under the Estate Tax Law does not necessarily demand a consideration inuring directly to the decedent, but may be satisfied with other kinds of consideration connected with a transaction done in the ordinary course of business identified with some good common law consideration.[7] The relevant part of the Internal Revenue Code of 1939, as amended, dealing with deductions for claims against the estate in computing the net estate for the purpose of taxation is copied in the margin.[8]

 The point might be raised that a sufficient consideration exists in the present instance referable to the widow's elec-

tion under the will of the decedent, resulting in her acceptance of a disparity in consideration, or, in other words, a detriment because the one-third residuary interest she took under the will was worth moderately less than the value of the one-half community interest she yielded. This was an interfamily transaction, non-commercial in nature, and to approve its effectiveness as a basis for the deduction of all the community indebtedness against the decedent's estate would seem repugnant to the purpose and policy of the Estate Tax Law.[9]

In any event, apparently the Supreme Court has substantially settled the matter in the case of Taft v. Commissioner, 304 U.S. 351, 58 S.Ct. 891, 894, 82 L.Ed. 1393, where the decedent in her lifetime promised educational institutions to establish an endowment fund and to pay salaries of orchestral musicians and a director of art, which were accepted and acted on by the institution, thus becoming a binding obligation against the estate under the state law, then the executor claimed a deduction for the amount payable under said promises, as being deductible claims, and the conclusion of the Court is reflected in the extract from the opinion quoted below.[10]

---

7. Carney v. Benz, 1 Cir., 90 F.2d 747, 113 A.L.R. 365; Commissioner of Internal Revenue v. Bryn Mawr Trust Co., 3 Cir., 87 F.2d 607.
 The reverse also has been held.
 Latty v. Commissioner, 6 Cir., 62 F.2d 952.

8. Title 26 U.S.C.A. § 812.
 "For the purpose of the tax, the value of the net estate shall be determined, in the case of a citizen or resident of the United States, by deducting from the value of the gross estate ———
 \* \* \* \* \*
 (b) Expenses, losses, indebtedness, and taxes. Such amounts ———
 \* \* \* \* \*
 (3) for claims against the estate, and
 \* \* \* \* \*
 The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an ade-

quate and full consideration in money or money's worth; \* \* \*."

9. "Deductions based on promises that run to and benefit members of the decedent's family, however, might well defeat the very purpose of the deduction section, which was to preclude family contracts and similar understandings made as a cloak to cover gifts or testamentary dispositions." Mertens Law of Federal Gift and Estate Taxation, Vol. 1, § 5.13, pp. 297-8.

10. "The claims against the estate were not incurred or contracted for an adequate and full consideration in money or money's worth within the meaning of the statute. The terms used, the legislative history of the section, and the regulations interpreting it, require this conclusion. The conditions imposed by the decedent as to the expenditure of the money promised and the stipulation on the part of the payee to expend it in that fashion, or its compliance with the conditions, do not constitute an adequate or

The principle of the Taft case has been followed with effect in the Court of Appeals for the Fifth Circuit.[11]

█ It follows that the claim made for deduction was properly disallowed to the extent of the one-half part chargeable to the widow's portion of the community estate. Neither counsel has submitted any decision by either the federal courts or the former Board of Tax Appeals or the present Tax Court, which is exactly parallel to this case, but even if it be a controversy of first impression, the proper disposition of it seems well foreshadowed by the authorities already mentioned, and there is also some supporting persuasiveness in other somewhat analogous decisions.[12] Moreover, there is the rule that provisions for deductions which lighten the impact of a taxing statute should not be strained to find an allowable deduction.[13]

█ Next, attention will be turned to the subject of administration expenses, including attorneys' fees. In this estate the amount incurred and paid under above item was $4,073.47. On review, the Examiner prorated the sum by the ratio of 65% allocated to the estate and 35%

allocated to the widow's one-half of the community estate. It is quite elementary under the community property system, as known in Texas, that the wife from the outset owns a vested one-half interest in the community estate. The death of this decedent dissolved the community relationship and his widow's part of the community estate became her own exclusively and in absolute severalty of title, yet nevertheless remained liable on community debts. Her election to take under the decedent's will did not make her property a part of the decedent's estate, but by her consent it only became subject to disposition under the terms of the decedent's will. In other words, the identity of her former interest in the community estate, which had become her separate and exclusive property, was not lost with respect to liability for community obligations and for that purpose was rightfully administered along with the decedent's separate and community property by the executors named in his will. So far as the record shows such combined administration in this instance was not merely perfunctory. A fairly large sum of debts, chiefly taxes, including the major item of some $25,000 owed as income taxes and

a full consideration in money or money's worth within the meaning of the Act. If there were doubt about the matter the legislative history of the statute and the Treasury regulations would require us so to hold. The Revenue Act of 1916 permitted the deduction of the amount of claims against the estate 'allowed by the laws of the jurisdiction * * * under which the estate is being administered.' The Acts of 1918 and 1921 contain like provisions. Under these Acts the claims in question would have been deductible as enforceable by state law irrespective of the nature of the consideration. The Act of 1924 altered existing law and authorized the deduction of claims against an estate only to the extent that they were 'incurred or contracted bona fide and for a fair consideration in money or money's worth.' Congress had reason to think that the phrase 'fair consideration' would be held to comprehend an instance of a promise which was honest, reasonable, and free from suspicion whether or not the consideration for it was, strictly

speaking, adequate. The words 'adequate and full consideration' were substituted by § 303(a) (1) of the Act of 1926, * * *. There must have been some reason for these successive changes. It seems evident that the purpose was to narrow the class of deductible claims, and we are not at liberty to ignore this purpose."

11. Ensley v. Donnelly, 190 F.2d 59.

12. Parrott v. Commissioner, 9 Cir., 30 F.2d 792; Estate of George Herbert Atkins v. Commissioner, 2 T.C. 332, 346–7; Estate of Herbert A. Schoenfeld, Administrator de bonis non, cta. v. Commissioner, 37 B.T.A. 36; Towner v. Commissioner, 2 Cir., 182 F.2d 903; Estate of Lucey v. Commissioner, 13 T.C. 1010, 1018–1019; United States v. Mitchell, 7 Cir., 74 F.2d 571; Fidelity-Philadelphia Trust Co. v. United States, 3 Cir., 222 F.2d 379.

13. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Empire Trust Co. v. Commissioner, 4 Cir., 94 F.2d 307.

interest for 1951, had to be paid. The other listed debts were accounts owed to merchants, utilities, an insurance agency and a physician. Then, of equal importance, the largest single asset of the estate being administered was Globe Foundry & Machine Company, finally valued at $87,710.80, which was described in the Estate Tax Return as a "going business". This evidently required active administration. The executors qualified in August 1953 and filed the Estate Tax Return in October 1954, and it is understandable from the circumstances of this record that their duties may well have required rather active attention from the executors. They had need also for advice and services of legal counsel. The business of liquidating the community debts and the conservatory function in regard to the going business aforesaid were of concern and interest affecting the widow's one-half of the original community estate. In making the apportionment for the administration expenses, including attorneys' fees, the Revenue Examiner evidently derived the fractions by a computation that showed the aggregate of the decedent's separate property and his portion of the original community estate comprised 65% of the total separate and community property owned by him and his wife at the time of his death.

This apportionment is found to be justified as fair and reasonable and will be sustained.[14]

*Marital Deduction*

The plaintiffs in Schedule A, Real Estate, of the Estate Tax Return, listed three business lots as separate property of the decedent, valued at $40,000, and in Schedule M claimed a marital deduction in the amount of $13,333.33, being the one-third interest therein attributable to the like fractional interest devised by the decedent to his widow. The Examiner raised the value of said property to $65,-000 and, at the same time, struck out said particular marital deduction sought by plaintiffs, but instead allowed a marital deduction in the sum of $9,033.33, covering the amount of life insurance proceeds collected by the widow in the total of $8,333.33, and the value of the decedent's interest in the family automobile, being the additional sum of $700, which were treated as having passed to the widow outside of the decedent's will. The present issue is whether a marital deduction was erroneously denied in respect to the aforesaid real estate. This precise question here posed has no beaten track and calls for original determination. The position of the plaintiffs is that the devise of an undivided one-third part and interest in and to all the decedent's estate, both separate property and his one-half of the community property, necessarily included a one-third interest in the separate property real estate aforesaid, and that such interest obviously qualified for the purposes of a marital deduction. On the other hand, the Government contends that when the surviving widow elected to take under the will and relinquish her one-half interest and part of the community estate, she accepted an interest worth some less than what she relinquished and by this concatenation of circumstances wiped out any footing for a marital deduction in relation to the separate real estate of the decedent. To be more explicit, the contention is that what she received was worth $105,568.18 and what she relinquished was worth $111,442.68. Thusly, the Government seeks to uphold this factor in the total deficiency assessed against the executors.

The defendant first points out that preliminary to any advent of a marital deduction there must first be a transfer of property from the decedent to the surviving spouse, which was includible in decedent's gross estate,[15] and such deduc-

---

14. Williams v. Howard, 10 Tex.Civ.App. 527, 31 S.W. 835; Norwood v. Farmers & Merchants National Bank, Tex. Civ.App., 145 S.W.2d 1100; Goggans v. Simmons, Tex.Civ.App., 319 S.W.2d 442.

15. Internal Revenue Code of 1939, § 812 (e) (1) (A).
 "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the

tion, within the maximum limit,[16] is allowable in an amount equal to the value of such transferred property, as provided by the statute already quoted in Footnote 15.

Next comes the critical part of the statute, Internal Revenue Code of 1939, § 812(e)(1)(E)(ii), which reads as follows:

"(ii) Where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

Here ends the statutory chronicle and next begins the handiwork of the regulations.[17]

Unless the illustration contained in the regulation just noted in the margin is a rational capsule of the underlying statute quoted above, there is no support for the Government's proposition. This illustration deals boldly with the interrelation of the marital deduction and community property, although nothing is said about community property in the specifically related statutory language. This is not to say that the Internal Revenue Code of 1939, in § 812, is altogether silent in

respect to community property, because such property is mentioned in that part of the section governing the computation of the adjusted gross estate, but is noticeably missing in that part of the section where the defendant plants its reliance for the authority of the quoted illustration published by the Commissioner.

Significantly, any reference to community property is likewise absent in the Senate Report No. 1013 on the Revenue Act of 1948, which was the origin of the presently pertinent provisions of § 812 of the Internal Revenue Code of 1939, as amended, and the comment in that report directed to the very provision looked at by the regulation and illustration in question are here copied, as follows:

"Clause (ii) of such Subparagraph (E) directs that in determining the value of any interest passing from the decedent to the surviving spouse, encumbrances or obligations shall be taken into account in the same manner as if the value of a gift to the spouse of the interest passing were being determined. This is a clarification which was not expressed in the Bill as passed by the House. If the decedent by his will leaves to his surviving spouse real estate subject to a mortgage (whether or not such mortgage was a personal liability of the decedent) the value of the interest passing to the surviving spouse does

---

United States, by deducting from the value of the gross estate ———
 * * * * *

"(e) Bequests, etc. to surviving spouse
"(1) Allowance of marital deduction ———
"(A) In General. An amount equal to the value of any interest in property which passes, or has passed, from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

16. Internal Revenue Code of 1939, § 812 (e) (1) (II).

17. Internal Revenue Code of 1939, § 812 (e) (1) (H).
Treasury Regulations 105, Sec. 81.47c (b), dealing with the subject of the marital deduction, in various aspects, states

in part that the statutory reference to the passing of a property interest subject to the imposition of an obligation by the decedent includes a bequest in lieu of the interest of his surviving spouse under the community property laws, and then illustrates that particular ruling, as follows:
"* * * (3) A decedent bequeathed certain securities to his wife in lieu of her interest in property held by them as community property under the law of the state of their residence. The wife elected to relinquish her community property interest and to take the bequest. For the purpose of the marital deduction, the value of the bequest is to be reduced by the value of the community property interest relinquished by the wife."

not under this section include the mortgage. If, however, the decedent by his will directs the executor to pay off the mortgage, such payment constitutes an additional interest passing to the surviving spouse. If the decedent bequeaths certain property to his surviving spouse subject, however, to her agreement, or a charge on the property, for the payment of $1,000.00 to X, the value of the bequest (and, accordingly, the value of the interest passing to the surviving spouse) is the value, reduced by $1,000, of such property." U. S. Congressional Service, 80th Congress, Second Session, 1948, Volume 2, pp. 1163, 1227-8.

Such legislative declaration naturally has probative force to show that the intent of Congress, as equally well manifested in the words of the law, was to recognize certain contingencies which would be relevant to the value of property identified with the marital deduction. The contingencies pointed out in said Senate Report certainly would decrease pro tanto the equity value of the property in question, and Congress was concerned with guarding against a marital deduction based on an inflated valuation. The regulation and illustration already discussed distort the intent of the law and push things to an absurdity. The premise is that under the present will the widow, by electing to take under the will and relinquish her community interest, was a loser in the transaction. Even so, it is difficult to see what that has to do with the right of the plaintiff executors to claim the disputed marital deduction. Surely, the Government cannot mean to claim that because the widow was out more than she got that what she took under the will was worthless. This comes right to what seems the fallacy in the position of the defendant because in talking about the value of the relinquished community estate an extraneous element is introduced. In the market place, the value of the property interest the widow acquired under

the will would not depend in the least on what she gave for such property ownership. It would still be worth just as much as if she had acquired it at a bargain. In contrast, if the interest going to her under the will of the decedent had been subject to a mortgage indebtedness, or an obligation in the nature of a charge to pay a given sum of money to some third person, such as were mentioned in the Senate Report, then, without doubt, such an item would be reflected as a minus factor in the valuation of the interest she took under the will, but that would be quite independent of whether she relinquished more or less than the value of the property left to her in the will. The defendant's contention is regarded as a compound of confusion and the regulations and accompanying illustration, against the background of this suit, are held to be an erroneous overgrowth of exposition.

The Government also has failed to come to grips with a latent quandary in the most prominent and explicit language of the governing statute, that is, the wording that "such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

The Gift Tax Regulation, applicable to this lawsuit, in directing how to make valuation of gifts, as to property like that in the present estate, prescribes that such value is the price at which such property would change hands between a willing buyer and a willing seller.[18]

The best counterpart which comes to mind in keeping with the statutory injunction to proceed "as if the amount of a gift to such spouse of such interest were being determined" is, if it be said that in an inter vivos transaction, the husband Stapf made a gift to his wife comprising a one-third interest in his whole estate, of both separate property and one-half of the community holdings, subject to the understanding that his wife, in turn, would make a gift of all

18. Reg. 108, Sec. 86.19.

her part of the community property and estate in trust for the children named as beneficiaries of the testamentary trust in Stapf's will. This supposed transaction presumably would entail a taxable gift by Stapf under the case of Commissioner of Internal Revenue v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958. To carry the similitude along, it should be assumed that such inter vivos gift from husband to wife was some less in value than the value of the community property she transferred in trust for the children. It would seem self-evident under the willing seller and willing buyer test that such gift property, being put to sale would have sold for none the less and none the more because of the value that the wife parted with in relinquishing her one-half of the community estate. Of course, to achieve the nearest likeness between the fictional gift transaction and this actual estate transaction, the gift of the one-third interest in the one instance and the devise of the one-third interest in the other instance are matching features, and, manifestly, no contention of empty tax liability could be made from the standpoint of the donor by saying that the gift property had no net value to the donee.

The marital deduction was fashioned to achieve better geographical equalization between citizens of the community property states and the non-community property states in the impact of estate and gift taxes, and undoubtedly it is an intricate expedient. There are a few cases which have decided close questions on this subject and in each instance the court upheld the right to the marital deduction.[19] It is well to recur to the policy of the marital deduction. That policy rests on the anticipation that the property used for the marital deduction and passing from the deceased spouse to the surviving spouse, though exempted from any tax in the estate of the deceased spouse, gains only a respite and not absolution, as such property will augment the estate of the surviving spouse and ultimately make its contribution under the Estate Tax Law, or else in the meantime under the Gift Tax Law. This sequence would not be defeated if the plaintiffs are upheld in respect to the rejected marital deduction in the present estate. The one-third interest taken by this widow under the will of her deceased husband is valuable property, and unless disposed of by gift earlier, or used for living needs, should in ordinary course of time, after her death, be reported and inventoried in the estate tax return of her estate. In addition she, by her election under the will, became liable for a gift tax on the disparity in value between this marital deduction property and her relinquished one-half of the community property estate.

The very spirit aforesaid of the law is the plain key to the statutory direction for valuation of marital deduction property and particularly the provision that "where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." [20] This bespeaks a studied purpose of the law to guard against the allowance of a marital deduction in a sum greater than the net value of the property involved. Thus, property worth $10,000, but encumbered by a mortgage debt of $1,000, if devised to a surviving widow, will not rate a marital deduction of $10,000. It should sell for $9,000 encumbered, or if the widow pays out $1,000 to discharge the debt, it then should sell for $10,000, but in either event, the widow's estate is only

19. United States v. Crosby, 5 Cir., 257 F.2d 515; Wachovia Bank & Trust Co. v. United States, D.C., 163 F.Supp. 832; Gwinn, Administrator v. Commissioner, 25 T.C. 31.

20. Internal Revenue Code of 1939, § 812 (e) (1) (E).

augmented by $9,000. The statute demands a matching valuation between the marital deduction and the constituent property and any marital deduction over $9,000 in the illustration used would violate the statute. The significance in this case of what has just been said is to point up how far afield things went in summoning the one-half community interest relinquished by the widow to demolish the marital deduction claimed by the plaintiffs. This brought into play an element having no connection with the purpose of the law as discussed above, and was wholly irrelevant. Indeed, such denial of the marital deduction runs counter to the law for the consequence would be to tax at this time the interest devised by the decedent to his surviving spouse and then tax it again in later years as a part of her estate and this would simply reverse the purpose of the law in providing for a marital deduction. The crucial mistake made in denying the marital deduction was the premise that the decedent's will imposed an "obligation" on his widow within the sense of the relevant statute last quoted above. In reality, the will only tendered an option. There was nothing predetermined. The most that can be said is that the will stated a condition, in contrast to the imposition of any pecuniary obligation annexed directly to the property devised to the widow. In other words, that did not subject the widow to an "obligation" in the sense of the law for the reason that to conclude otherwise would be entirely pointless to the purpose of the law as already brought out above.

The right of the case on this issue is with the plaintiffs. In fact, the defendant is in the vulnerable position of relying on a regulation which, as read by the defendant, would be out of step with the apposite statute and, actually, the very regulation did not foreshadow any such application as now urged by the defendant. The defendant's rule of diminishing marital deductions to the point of zeroing out any marital deduction would even outdo the conventional law of diminishing returns in the political economy field. At least, no such outcome is spelled out in the regulation in question.

A judgment is directed in conformity with the directions and terms of this opinion.